272 So.2d 335 (1973)
STATE of Louisiana
v.
Jimmy Michael McCAULEY.
No. 52168.
Supreme Court of Louisiana.
January 15, 1973.
*337 Joe J. Tritico, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
HAMLIN, Chief Justice.
Defendant appeals from his conviction of the crime of murder of Isa Pomier, LSA-R.S. 14:30, and his sentence to death. Twelve bills of exceptions are presented for our consideration and determination.

BILLS OF EXCEPTIONS NOS. 1, 2 AND 3
Bill of Exceptions No. 1 was reserved when the trial court sustained the State's objection to the following question propounded by defense counsel to prospective juror Kenneth W. Hine:
"If you are accepted as a juror, Mr. Hine, since the sentence might be within your prerogativethat is, if you should be satisfied that this defendant is guilty of murderthen there are two things we are entitled to know. Have you now made up your mind, if you should determine that this defendant is guilty of murder, which kind of sentence you would impose?"
Bill of Exceptions No. 2 was reserved when the trial court sustained the State's objection to the following question propounded by defense counsel to prospective juror Bennie J. Banken:
"Now, then, the Court will also charge you, Mr. Banken, and the other jurors, that if the State, the prosecution in this case, should establish that this defendant was guilty to your satisfaction and beyond a reasonable doubt, of either murder or manslaughter, which is a lesser included offense, then in order for this defendant to be found not guilty by reason of insanity, then, and only then it is his responsibilityhe must then shoulder the burden and establish by a preponderance of the evidence that's a little bit more, and less than reasonable doubtthat at the time of the commission of this alleged instance he didn't know what he was doing, or he was not in control of his mental...."
*338 Bill of Exceptions No. 3 was reserved when the trial court sustained the State's objection to the following question propounded by defense counsel to prospective juror John M. Duhon:
"* * * The Court will also charge you, Mike, that the State must bear the burden of proving the allegations contained in this complaint or Bill of Indictment, that they must do so with proof that is to your satisfaction and beyond a ...."
Defense counsel urges herein that:
"The questions requested by the defendant in the instant case were clearly directed toward the sentences which might be imposed. The question directed as Juror Hine was clearly framed to determine if he had any predisposition as to the sentence which would be applicable if the defendant were found guilty. The question directed at Juror Banken, if allowed to have been completed, was framed to determine if he had any predisposition toward a qualified verdict. Each of these questions is within the bounds of the State v. Henry [196 La. 217, 198 So. 910] decision and should clearly not have been denied because of State v. Richey. [258 La. 1094, 249 So.2d 143]
"The prejudice caused by the refusal to allow these particular questions is clear in that it denied the defendant an opportunity to discover a ground for a challenge for cause or preemptory challenge. In fact, at the time the proposed question was disallowed on voir dire examination of Mr. Duhon, the defense had used all of its pre-emptory challenges and as a result Mr. Duhon became the twelfth accepted juror and subsequently the jury foreman. The effect of the denial of the question was to prevent the defense from establishing grounds for challenge for cause thereby forcing it to accept this juror. This is analogous to instances where a challenge for cause is overruled, and the defendant's preemptory challenges are exhausted before the jury is obtained. It is settled that in such a case the accused is prejudiced and the verdict will be set aside. State v. Henry, 197 La. 999, 3 So.2d 104, 111 (1941), citing State v. McCoy, 109 La. 682, 33 So. 730 (1903).
"The substance of the completed question which counsel proposed to ask Mr. Duhon would have included the following additional factors:
`... and if you were satisfied from the evidence that the defendant was guilty of murder do you presently have an opinion as to the nature of the punishment or the kind of sentence you could impose.'
The contents of this question would then have been the same as the question propounded to Juror Kenneth Hine, and if the answer was in the affirmative the juror would then be asked whether such an opinion could be affected or changed by the evidence.
"The defendant contends that the questions were neither long nor did the portions of the questions asked tend to usurp the power of the judge to charge the jury. At the time the proposed question was disallowed on voir dire examination of Mr. Duhon, the defense had used all of its preemptory challenges and as a result Mr. Duhon became the twelfth accepted juror who was later to become the jury foreman. The defendant acknowledges that the presiding judge had discretion to pass upon the qualification of jurors and that his ruling on such matters will not be set aside unless the error is manifest. In refusing, however, to allow counsel to ask the incompleted questions as well as the proposed complete questions, the trial judge, as did the judge in Henry, abused his discretion.
"If the prosecution can exclude persons who are opposed to capital punishment, how can the defense fairly be denied an opportunity to discover and exclude those persons opposed to life imprisonment? How can a jury be impartial if its members would only apply one penalty to a guilty person when the legislature has made it their function to deliberate and choose between *339 two penalties? In addition to destroying the impartiality of the jury, denying these questions also violates the fundamental principle that justice must be individualized. That is, a jury should decide from the evidence presented at trial whether a given defendant should live or die. The decision is based on his own individual merits, faults, virtues, and shortcomings. If a jury has decided a penalty in advance of learning the facts of a case, all semblance of matching the punishment to the crime disappears. The defendant has been prejudged regardless of his individual worth, and regardless of the circumstances surrounding the crime.
"Defendant had a right to inquire of Juror Hine if he could impose a certain kind of sentence if his guilt should be proven and defendant had a right to inquire of Juror Banken if he could vote for not guilty by reason of insanity if defendant was proven guilty of murder or manslaughter and if it was proven that he did not know what he was doing, etc., when the act was committed, and defendant had a further right to inquire of the juror John M. Duhon if he had an opinion as to whether he could vote for life imprisonment or capital punishment, if defendant's guilt was shown beyond a reasonable doubt. See State v. Johnson, 226 La. 30, 74 So.2d 402 (1954); State v. Henry, 197 La. 999, 3 So. 2d 104 (1941)."
After defense counsel had propounded the question supra to prospective juror Kenneth W. Hine, and the State had made its objection, the trial court addressed defense counsel as follows:
"Well, I'll sustain the objection to the question as phrased. I think you can ask him whether or not he would be able to arrive at one of the several verdicts that he is permitted to reach under the law. But, of course, the District Attorney is correct, the Court is the one that actually imposes sentence. However, it is within the prerogative of the jury to decide whether that sentence will be with or without capital punishment. On the basis of the question as phrased, I'll sustain it. If you want to question him further as to whether he could render either one or the other, then I certainly think it would be a valid question."
Defense counsel reserved a bill of exceptions and did not rephrase his question.
Article 871 of the Code of Criminal Procedure provides that a sentence is the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty, or upon a judgment of guilty, and it shall be pronounced orally in open court and recorded in the minutes of the court.
Defense counsel's question to prospective juror Hine was improper; the imposition of sentence is the prerogative of the trial judge and not that of a juror. The trial judge properly sustained the State's objection and committed no reversible error in not allowing defense counsel to question the prospective juror as to the sentence he could impose. The jurisprudence cited by defense counsel with respect to the latitude allowed defense counsel in the questioning of prospective jurors does not extend to such a question as was herein propounded.
The trial court correctly disallowed the questions set forth supra in Bills of Exceptions Nos. 2 and 3; their statements encroached on the prerogative of the trial judge to instruct the jury as to the law of the case; his per curiam properly recites:
"The objection involved in this bill was sustained to a lengthy statement of law being expounded by defense counsel to a prospective juror on his voir dire examination because this is not the purpose of such examination and it is within the province of the Court to instruct the jury as to the applicable law. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971). In this case the Court explained some phases of the law to the jurors on their voir dire examination and it is convinced they were fully instructed as to the law to be applied in the Court's charge at the conclusion of the trial. No objections were made to the charge either *340 by defense counsel or the State." (Per Curiam to Bill of Exceptions No. 2; it also applies to Bill of Exceptions No. 3.)
Defense counsel has not shown that he had to accept an obnoxious juror; he has not shown that the defendant suffered any prejudice by the services of John M. Duhon as jury foreman.
Bills of Exceptions Nos. 1, 2 and 3 are without merit.

BILL OF EXCEPTIONS NO. 4
Bill of Exceptions No. 4 was reserved when the trial court sustained the State's objection to the following question propounded by defense counsel to the witness Kelly Vigo on cross-examination:
"Q. Kelly, in response to a question on redirect you were asked if you felt sorry at this time for McCauley, I believe your answer was: `Well, I don't know if I do or not.' Do you recall making that statement?
"A. Yes, sir.[1]
"Q. Would such a statement be motivated by the fact that you considered this boy needs help?"
The trial judge in his per curiam to this bill states that he did not believe "that any answer the witness may have given would be relevant or material to any issue involved in this case."
Defense counsel contends that since the witness testified to a fact, he was entitled to cross-examine him upon the whole case. He argues that the trial judge committed error in not allowing him to propound the question supra.
The instant bill of indictment charges the defendant with the murder of Isa Pomier, who was the wife of Austin Pomier, now deceased. Defendant, who allegedly believed that Austin Pomier had removed money from his wallet, allegedly went to the Pomier residence and fired at a shadow in the dark. Both Mr. and Mrs. Pomier were killed.
This prosecution is for the murder of Mrs. Pomiernot that of Mr. Pomier. Whether the witness felt sorry for the defendant and was motivated in his sentiments by a consideration that the defendant needed help was not relevant to a determination of the guilt or innocence of the defendant with respect to Mrs. Pomier's death. (See Footnote No. 3 and Bill of Exceptions No. 7 infra.) The trial judge, therefore, committed no reversible error in disallowing the above cross-examination.
Bill of Exceptions No. 4 is without merit.

BILL OF EXCEPTIONS NO. 5
Bill of Exceptions No. 5 was reserved when the trial court overruled defense counsel's objection to the offering in evidence of S-1, S-2, S-4, S-7 and S-8, photographs of Mr. and Mrs. Pomier taken after the instant fatal shooting.
Counsel contends that the defendant was prejudiced by the introduction of the photographs, and that the photographs were inflammatory to the extent that they inflamed the minds of the jury.
The trial court in its per curiam to this bill stated that it did not believe that the photographs would inflame the minds of the jury, and even so the photographs were admissible as relevant evidence. It relied on the case of State v. Hall, 256 La. 336, 236 So.2d 489 (1970).[2]
*341 The photographs of the deceased show them lying in pools of blood; both parties were attired in night clothes. The pictures of Mrs. Pomier show her lying on her back with outstretched arms. The pictures of Mr. Pomier show him lying on his stomach; his clothes are blood stained.
In a criminal prosecution the burden is upon the State to prove every element of the crime charged. The instant photographs were of substantial probative value because they tended to show that the victim was shot. State v. Shaffer, 260 La. 605, 257 So.2d 121.
We find that the photographs had evidentiary value. They were relevant to show the death of Mrs. Pomier, the cause of her death, and her identity. Any photograph of a dead body is unpleasant; however, the test of admissibility of such photographs is whether their probative value outweighs their probable prejudicial effect. State v. Ford, 259 La. 1037, 254 So.2d 457 (1971). We conclude that the probative value herein of the photographs introduced in evidence outweighed whatever effect they might have had on the jury. The trial judge properly allowed the photographs to be introduced in evidence as exhibits of the State.
Bill of Exceptions No. 5 is without merit.

BILL OF EXCEPTIONS NO. 6
Bill of Exceptions No. 6 was reserved when the trial court sustained the State's objection to the following question propounded by defense counsel to State's witness David Wagoner: "Was the city out of funds and didn't have any more money to buy films to go back out there and...."
This bill needs no discussion; any answer that might have been given to the question supra would not have been relevant or material to any issue in the case. See LSA-R.S. 15:275.
Bill of Exceptions No. 6 is without merit.

BILL OF EXCEPTIONS NO. 7
Bill of Exceptions No. 7 was reserved when the trial court overruled defense counsel's objection to the introduction in evidence of S15, an alleged written confession of the defendant.[3]
*342 Counsel for the defendant contended in the trial court that the proper foundation had not been laid for the introduction of the confession, and that the defendant should be given time to offer evidence and establish that the confession was not given freely and voluntarily.[4]
Herein defense counsel contends that the trial judge informed the jury that he had made his determination after hearing only evidence presented by the State without affording the defendant the right to rebut. He urges:
"The effect of the trial court's ruling in this instance was to allow the defendant to introduce evidence rebutting the foundation for the confession `only for the jury to consider in its determination of what weight should be given the statement." Per Curiam to Bill of Exceptions No. 7. Such a procedure and effort on the part of the defendant after the court had declared the confession had been freely and voluntarily made, and after it had been permitted into evidence could serve the defendant no useful purpose and under the authorities cited above constitutes error prejudicial to the defendant."
The following per curiam of the trial judge, with which we agree, explains the reasons for his ruling in which we concur:
"Before offering the defendant's inculpatory statement referred to in this bill the State had laid a proper foundation therefor out of the presence of the jury under Article 794 of our Code of Criminal Procedure.[5] Sgt. John Taveney said he had *343 given the defendant the required Miranda warning. Both Taveney and his fellow officer, John Melancon, testified that although he appeared to be somewhat under the influence of an intoxicant or drug the defendant was in control of his faculties and was well aware of what he was doing and that the statement was given by him freely, voluntarily and without duress or inducement of any form. At the conclusion of their testimony and before the jury was recalled, the Court asked counsel for the defendant whether he had any evidence to offer concerning the admissibility of the statement and none was presented on behalf of the defendant. The Court then concluded the statement was admissible and the jury was recalled. The police officers repeated their testimony as to the defendant's condition and the circumstances under which the statement was made and they were cross-examined by defendant's counsel. Thereupon, the State offered the document, marked S15, and it was admitted in evidence before the jury over defense counsel's objection. The defendant's motion to present evidence at that time in an attempt to establish that the statement was not secured freely and voluntarily was also overruled because it should have been presented when the jury was out following the State's evidence concerning the admissibility of the statement. State v. Coins, 232 La. 238, 94 So.2d 244 (1957). The defendant still had the right to introduce such evidence when the time came for presenting his case, but only for the jury to consider in its determination of what weight should be given the statement. Had the Court tried the question of the admissibility of the confession before the jury and then concluded it was inadmissible, this would constitute a valid ground for a mistrial. (See the comment and authorities cited under Louisiana Code of Criminal Procedure, Article 794).
"It must be added that the evidence on this subject later presented by the defendant would not have changed the Court's ruling that the statement was admissible."
Under the facts and circumstances as related in the above per curiam, the trial court committed no error in allowing the introduction of the confession in evidence. The confession was only part of the evidence considered by the jury in determining the guilt or innocence of the defendant; the record reflects that he suffered no prejudice from its introduction in evidence.
Bill of Exceptions No. 7 is without merit.

BILL OF EXCEPTIONS NO. 8
Bill of Exceptions No. 8 was reserved when the trial court sustained the State's objection to the following question propounded by defense counsel to the witness Johnny Melancon on cross examination: "Did you know Pomier to be a homosexual?"
We find no merit in this bill; the question called for a hearsay answer. The trial judge correctly stated in his per curiam: "The State's objection and the Court's ruling in this instance was directed at any answer by the witness based on hearsay. Had defense counsel rephrased the question so as to call for an answer based on the witnesses personal knowledge, he, of course, had the right to do so, and the question would not have been objectionable."
Bill of Exceptions No. 8 is without merit.

*344 BILLS OF EXCEPTIONS NOS. 9 AND 10
Bills of Exceptions Nos. 9 and 10 were reserved when the trial court denied defense counsel's Motion for a New Trial, Amending Motion for a New Trial, and Supplemental and Amending Motion for a New Trial.
The Motions for a New Trial and the Amending and Supplemental Motions are lengthy; we have read them and find that able counsel for the defendant has correctly synopsized and narrated them as follows:
"The First Original and Amended Motions for a New Trial and the Second Original and Amended Motions for a New Trial urged that the requirements of jury sequestration were violated. There are four aspects of impropriety in the instant case which taken either separately or together constitute error prejudicial to the defendant: (1) quartering the jurors in separate rooms where there were exits and where all jurors were not under the sheriff's supervision; (2) the seating of jurors at separate tables for meals and allowing them to give their meal orders to outsiders; (3) allowing the jurors to speak to numerous outside persons including janitors, maintenance men, police jurors, the Court Reporter, the District Attorney, and inmates from the parish jail; (4) the presence of an unknown intruder in the jury room at the time the jury was deliberating its verdict."
In support of the above motions, defense counsel argues:
"In ruling against the defendant's motions for new trial on these issues, the court stated that it was `convinced that no person, other than the jurors, was actually in the Grand Jury Room with the door closed during the time the jury was deliberating.' Such a conclusion is unsupportable. The record clearly indicates that two separate witnesses, Mr. Dallas Smith and Juror Bennie Banken testified as to the presence of the intruder. In addition the State declined to rebut this testimony with testimony of other jurors who were present at the time the intruder entered the jury room as it is allowed to do under LSA-R.S. 15:470, supra.
"Since a death penalty was possible and was in fact imposed in the present case, every possible precaution should have been taken to prevent the chance of improper outside influence of the jury. The lax security precautions taken in the present case increased the chance of such influence and now serve to subtract seriously from the impression of a fair, impartial trial.
"In addition to the foregoing instances of jury separations, it was also shown that:
"a) The morning following the closing arguments of counsel for the state and defendant, and prior to receiving instruction from the court, the eleventh selected juror left his seat and the other jurors who were seated in the jury box, he then located himself in front of its rail and attempted to discuss the case with the other jurors, that he attempted to adopt gestures and a mannerism which was comparable to those portrayed during the defendant's counsel's closing argument of the previous night. (See testimony of Dallas Smith).
"b) After the jury had been deliberating for several hours, the jury returned to the court room; immediately after the court was called to order the twelfth juror, Mr. John M. Duhon, arose from his seat and was permitted to withdraw himself from the remaining jurors, proceeding therefrom to the bench and there directed certain remarks to the court, all within the hearing of the defendant and counsel for the state and defense, all of which events occurred in the presence of but outside the hearing of the remaining jurors.
"Again, and in these instances, their separation from the other jurors should have been further grounds for a new trial.
"In both his first and second Motions for New Trial, the defendant challenged as reversible error the trial court's instructions *345 to the jury regarding pardon and parole. The instructions were given at the request of the foreman of the jury after the jury had begun its deliberations. In its Per Curiam to Bill of Exception No. 9, the trial court stated that it believed the additional instructions were correct, both from a standpoint of substance and procedure. The same finding was made in its Per Curiam to Bill of Exception No. 10. The trial court also noted that the defense counsel had failed to object to the additional instructions. It is respectfully submitted that the trial court erred in its ruling. The additional instructions constituted prejudicial error and constituted grounds for a new trial.
"In denying the defendant's Motion for a New Trial, the court prejudiced the defendant by denying him the opportunity to present evidence attacking the evidentiary foundation for the confession. This denial constituted prejudicial error.
"In the defendant's supplemental and amending Motion for a New Trial which was filed on the 3rd day of September, 1971 and in which he amended his second original motion, it was alleged and established at the hearing thereof that the jurors were not quartered in premises free of improper influences, that they were exposed to discomfort, personal danger, unsanitary conditions, lack of fire escapes, etc., all of which was in violation of ordinances of the City of Lake Charles as well as R.S. 40:1580, et seq. As a very matter of fact, during the trial of the defendant's Motion it was established that the Fire Marshal, through the testimony of the Deputy Fire Marshal, that after an inspection was made of the Jury Quarters, he, in his official capacity, condemned said quarters. See Record Exhibit __________."
Article 851 of the Code of Criminal Procedure provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
"The court, on motion of the defendant, shall grant a new trial whenever:
"(1) The verdict is contrary to the law and the evidence;
"(2) A bill of exceptions reserved during the proceedings shows prejudicial error;
"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not available, and if the evidence had been discovered before or during the trial, is introduced at the trial it would probably have changed the verdict or judgment of guilty;
"(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
"(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
We have read the testimony taken at the hearings of the above motions and find that the trial judge correctly denied them. The grounds asserted for granting the motions do not fall within those provided in LSA-C.Cr.P. Art. 851 supra. No prejudicial error was committed during trial. The trial judge's per curiam, which we adopt as our reasons for finding that Bills of Exceptions Nos. 9 and 10 are without merit, recites:
"With respect to paragraph I of the Motion For A New Trial, the Court concludes: first, it has not been established that the testimony of Capt. Earl Landry would probably have changed the verdict in any way; and, also, there was not an exercise of reasonable diligence by the defendant *346 in securing and presenting his testimony at the trial.[6] Capt. Landry was in the courthouse on several occasions, to my knowledge, while this trial was going on. He was mentioned as having been present when the defendant was taken into the city police station after his arrest. This testimony was brought forth when the State was presenting its case, and defendant had every opportunity to question Capt. Landry to determine whether or not he wished to call him as a witness before the time came for the presentation of the defendant's case. The Court therefore concludes the motion should be denied with respect to the grounds set forth in paragraph I.
"Turning to paragraph II, there was evidence that the jurors came in contact with the janitorial staff of the parish while the latter was cleaning the jury quarters and changing the sheets on the beds. However, there was no evidence which even tended to establish that any of the jurors discussed any phase of this case with the janitors at that or any other time. Other than one or two remarks which may have been made by the jurors, there is no indication that the janitors responded in any way and, certainly, it is clear that the case was not discussed between the jurors and the janitors.
"It was also established that some of the jurors were seated at different tables at the restaurant where they ate. Undoubtedly, this resulted from the fact that they didn't have a table large enough to seat all of the jurors, and they were unable to feed all of them at the same time without separating them at the tables. But, again, there is no evidence to indicate there was any discussion of this case by the jurors at the restaurant, or going to and coming from there. Nor was there any evidence introduced that there were any contacts made between the jurors and any outside persons on these occasions.
"Now there was testimony to the effect that some person, other than a juror, was in the jury room about the time the jury requested information concerning the meaning of the possible verdict of guilty without capital punishment.
"This Court is convinced that no person, other than the jurors, was actually in the Grand Jury Room with the door closed during the time the jury was deliberating. Although he did not believe he had done so, it is possible that Deputy Sheriff Robert Holleyman, who was attending the jury at this time, may have been partially or entirely within the room, at the door holding the door knob, when information was sought by the jury concerning the possible verdicts. However, it is clear from the evidence that Mr. Holleyman informed the juror he could not discuss the case with him, and that it would be necessary for any further instructions they needed to come from the Judge.
"* * *
"So far as the complaints about the conditions of the jury quarters were concerned, *347 presumably these were made to the bailiff and he, in turn, communicated those to the janitors or a representative of the police jury. The evidence shows that the janitorial staff took immediate action to correct whatever unsatisfactory conditions that may have existed.
"* * *
"As I have said, there has been no evidence introduced at any of these hearings which even indicates there was any communication between these jurors and outsiders concerning this case, except the request made by the foreman of the jury, or one of them, concerning needed instructions about the effect of their verdicts. And then the bailiff informed them such information would have to come from the judge.
"There has been no evidence presented which would indicate the jurors in this case were influenced in any way in arriving at their verdict by this, or any other incident which may have taken place during the course of this trial and during their absence from the courtroom.
"No prejudice has been shown, and for these reasons the second ground alleged for a new trial must necessarily be denied.
"Undoubtedly, the jury quarters on the third floor of our courthouse, which I am sure have been used in every capital case that has been tried in this parish since the courthouse was built in about 1912, could have been cleaner. And, certainly, it would seem that this parish should provide better accommodations for jurors. However, the conditions of which the jurors complained when the trial beganwith the possible exception of the Fire Marshal's requirements concerning fire safetywere corrected. There is no indication that these circumstances in any way influenced the verdict that was rendered by the jury in this case.
"For these reasons, the Second Motion For A New Trial and the Amending Motion For A New Trial are denied."
Bills of Exceptions Nos. 9 and 10 are without merit.

BILL OF EXCEPTIONS NO. 11
Bill of Exceptions No. 11 was reserved when the trial court denied defense counsel's Motion for a New Hearing on the Voluntariness of Defendant's Confession.
Herein, counsel urges that the trial court's refusal to allow the defendant to put forward evidence in support of his Motion for a Hearing on the Voluntariness of the Confession, a hearing which is required under the decisions of the United States Supreme Court, was error prejudicial to the defendant and requires the granting of a new trial.
The matters urged in this bill were urged in Bill of Exceptions No. 7 and the Motion for a New Trial. They have been previously considered and determined.
Defense counsel did not avail himself of the opportunity to present evidence at the original hearing on the voluntariness vel non of the defendant's confession. However, he ably represented defendant during trial, presenting a lengthy defense. The jury was presented voluminous evidence in addition to the evidence concerning the defendant's confession for its consideration in determining the guilt or innocence of the defendant. Counsel cannot now complain of the trial judge's refusal to grant him a new hearing. We find no abuse of discretion on the part of the trial judge in his denial of the instant motion.
Bill of Exceptions No. 11 is without merit.

BILL OF EXCEPTIONS NO. 12
Bill of Exceptions No. 12 was reserved to the trial court's denial of defendant's motion in arrest of judgment.
The motion in arrest of judgment attacks the imposition of the death penalty as punishment for murder; it attacks the constitutionality of LSA-R.S. 14:30 insofar as it provides for the death penalty.
At the present time, the mandate of the United States Supreme Court in the case *348 of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), requires the imposition of a sentence other than death. The motion in arrest of judgment is therefore with merit insofar as it attacks the death penalty imposed upon defendant.
For the reasons assigned, the conviction is affirmed; the death sentence imposed upon defendant is annulled and set aside, and the case is remanded to the Fourteenth Judicial District Court with instructions to the trial judge to sentence the defendant to life imprisonment.
BARHAM, J., concurred in decree only and filed opinion in which TATE, J., concurred.
DIXON, J., concurred in result only.
BARHAM, Justice (concurring in the decree only).
I would dissent from the majority's disposition of Bills of Exceptions Nos. 1 and 3 except that the issue presented by these bills has become moot under Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and under our judgment which annuls the death sentence.
Bills of Exceptions Nos. 1 and 3 were reserved when the court refused to permit the defense to ask certain questions on voir dire examination. Both of the questions sought to determine whether there was a predisposition, a prejudice or bias, which would commit the jurors to a verdict of guilty of murder with capital punishment.
In cases under the former law, where verdicts of "guilty" in capital offenses automatically carried the death penalty and verdicts of "guilty without capital punishment" automatically called for imposition of sentence to life imprisonment, the defense was entitled to discover whether individual prospective jurors were opposed to a qualified verdict, just as the State was entitled to discover those who were opposed to the death penalty. The questions here are almost identical with ones held to be permissible in State v. Henry, 196 La. 217, 232-237, 198 So. 910 (1940); see also State v. Jackson, 227 La. 642, 80 So.2d 105 (1955). Moreover, the majority has found lack of prejudice by again using the obsolete rule of law that defendant has failed to show he was forced to accept "an obnoxious juror". See C.Cr.P. Art. 800, Official Revision Comment; see also dissent in State v. Cormier, 264 La. 636, 272 So.2d 686, decided January 9, 1973. However, as first stated, Bills of Exceptions Nos. 1 and 3 present moot issues since we have necessarily annulled the death sentence, thereby requiring the imposition of the qualified verdict.
I respectfully concur in the decree only.
NOTES
[1] The testimony given on redirect examination was as follows:

"Q. Do you feel sorry for McCauley now?
"A. I don't know whether I do or not.
"Q. You don't know?
"A. No, sir."
[2] In State v. Hall, 256 La. 336, 236 So.2d 489 (1970), this Court stated:

"These photographs were clearly relevant to the burden imposed upon the State to establish the killing beyond a reasonable doubt. They were illustrative of the manner in which the killing was accomplished and furnished proof of the identity of the victim. The State was not relieved of the burden of establishing these facts beyond a reasonable doubt simply because witnesses may also have testified to the same effect. Undoubtedly the photographs served to prove details and clarify questions in the minds of the jury which the testimony alone could not do.
"The fact that objects or photographs constitute or portray a repulsive spectacle and tend to prejudice the jury furnish no valid grounds for their exclusion where they are otherwise relevant. State v. Hamilton, 240 La. 302, 187 So.2d 417 (1966)."
[3] "My name is Jimmy Michael McCauley, I am twenty one years of age and reside at 2908 Hazel Street, Lake Charles. Louisiana. On Saturday night, December 20, 1969, I was in the Siesta Lounge, in the 900 block of Ryan Street. I had been drinking and was intoxicated. As I was sitting at the bar, a guy by the name Austin Pomier, came up to me. He stole thirty dollars from my trousers. I didn't know until the next day that he had taken my money. On the night of December 23. 1969, at approximately 1:55 A.M., I went to 720 Pine Street. This is the home of Austin Pomier. I knocked on the door and I told him that I wanted the thirty dollars that he had stolen. He told me that he didn't have the money, and for me to leave him alone. He closed the door and I walked away. I went and got a shotgun, that I had hid in some bushes. This is a sixteen gauge, automatic shotgun. I walked back to Austin Pomier. I kicked the front door open. I looked for him and saw something moving in the next room. I saw Austin Pomier as he was trying to close the door. I fired a shot from the shotgun. I saw that I had hit him. I walked into this room and saw him laying on the floor. There was blood on his person. I heard a woman scream. I saw Austin Pomier as he lay on the floor, move. I walked up to him and fired another shot into his body. I never at any time while I was in the house saw the woman, who had screamed. The only person that I saw was Austin Pomier. While I was still standing over Austin Pomier, someone jumped on my back. I fought him off and lost the gun while we fighting. I then ran from the house. I have read this statement and find that it is true and correct to the best of my knowledge." [The photographs considered in Bill of Exceptions No. 5 show that Mr. Pomier's body was in one room, and his wife's body was in an adjoining room.]
 /s/ "Jim McCauley 
"WITNESSES: /s/ "Johnny Taveney 
/s/ "Johnny Melancon" 

The record reflects that the District Attorney filed a Notice of Intent to Use Statement; it recited: "You are hereby notified in accordance with Article 768 of the Code of Criminal Procedure, of the State of Louisiana, that the State of Louisiana intends to use against you in the trial of your case any inculpatory statement, oral or written, and/or any confession, oral or written made by you subsequent to the alleged offense with which you are charged."
[End of Footnote 3]
[4] Above the confession set forth in Footnote No. 3 supra, there appears the following statement made by the defendant, Jimmy Michael McCauley:
 "DATE December 23, 1969

"I Jimmy Michael McCauley being in the custody of the Lake Charles City Police Department, Parish of Calcasieu, State of Louisiana, having been warned by Johnny Taveney and Johnny Melancon the person (or persons) to whom the hereinafter set out statement is by me made, that I do not have to make any statement at all, and that any statement made by me may be used in evidence against me at my trial for any offense which I may have committed and/or for the offense concerning which this statement is made, and that I am entitled to consult with my attorney, lawyer, or counsel before I make any statement or statements whatsoever, and that if I cannot afford an attorney, lawyer or counsel, that one will be appointed for me at a preliminary hearing or prior to the time of my arraignment. After having had the above read to me and having read it myself, I desire to, and I hereby waive my right to talk to or consult with an attorney, lawyer or counsel before making this statement, and I do hereby make the following voluntary statement of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.
 /s/ "Jim McCauley"

[5] "The court may, and at the request of the state or a defendant shall, remove the jury from the courtroom when the court hears matters to be decided by the court alone. The court may remove the jury from the courtroom at any time when considered in the best interest of justice." Art. 794, LSA-C.Cr.P.

The Official Revision Comment under Art. 794 recites in part in Par. (b) that:
"The most common situation in which the judge must remove the jury, if requested to do so, is the occurrence of a disagreement on the admissibility of a confession. It is grounds for mistrial if the admissibility of a confession is tried in the presence of the jury and the judge decides that the confession is inadmissible. * * *"
[6] In his motion for a new trial, defense counsel averred: "That Captain Earl Landry of the Police Department, City of Lake Charles, will testify that to his knowledge he has never conversed with the accused, Jimmy Michael McCauley, that he was neither at the police station after the accused was delivered by Officer John Taveney nor did he discuss or have a conversation with him; that moreover, this witness will further testify that he at no time gave anyone authorization or approval to interrogate the accused.

"Captain Earl Landry is not beyond the process of the Court; he is presently assigned to the Lake Charles City Police Department.
"The above evidence to be elicited from the witness, Captain Earl Landry, would not be cumulative of other evidence heard by the jury; that it is material and important to the defense made in this case, namely, that it would seriously contradict and attack the credibility of the testimony of Sgt. John Taveney, through whom the State attempted to establish that the statements or confessions of the accused were free and voluntary and from whose testimony the court erroneously concluded that the proper foundation had been laid for the admissibility of said confessions."