404 So.2d 1186 (1981)
STATE of Louisiana
v.
Edward Charles MORRIS.
No. 80-KA-2873.
Supreme Court of Louisiana.
September 8, 1981.
Rehearing Denied October 9, 1981.
*1187 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard K. Knapp, Dist. Atty., Evelyn Oubre, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
James Miguez & Carl A. Leckband, Jr., Lake Charles, for defendant-appellant.
BLANCHE, Justice.[*]
The defendant was indicted by the Calcasieu Parish Grand Jury on a charge of second degree murder in connection with the shooting death of Martin D. Wilson. R.S. 14:30.1. The defendant was tried by jury and found guilty of manslaughter. R.S. 14:31. His motion for a new trial was denied, whereupon the defendant was sentenced to serve eighteen years.

FACTS
Martin D. Wilson was shot in the head on October 17, 1979 and died three days later. The defendant and the victim were guests in the house of Arnet Pradia, who testified that the two men were alone in her kitchen when she heard a "pow". She went into the kitchen and found Wilson on the floor with a gunshot wound in his forehead. The back door was open, the defendant having left. No weapon was found on the scene by the police, nor was one ever discovered that could be traced to the shooting.
At trial, two police officers testified concerning the arrest of the defendant. Both stated that the defendant surrendered when they knocked on the door of the motel room occupied by himself and one Gloria Williams. When they asked him what had happened, Morris remarked that he had to do it, and that the officers would have done it too. The officers then recounted that the defendant had added something to the effect that someone had been "messing" with his son.
The defendant's version of the incident stressed the violent propensities of the victim. He testified that the victim was constantly harassing him and that he had knowledge that his son had been assaulted. Several witnesses testified that the victim, who was known to carry a gun, had threatened Morris with death and one testified that the victim, while armed with a pistol, had assaulted and struck the defendant's son Stafford. The defendant testified that the shooting occurred when the victim produced a pistol and the defendant rushed him, causing the pistol to point upward. Defendant claimed that the gun discharged as the victim was looking down, striking him in the forehead. The defendant recalled fleeing, but could not remember anything further concerning the gun involved. Concerning his statement to the police officers, he admitted telling them that he had to do it and that they would have done it also, but he denied stating the victim had been interfering with his son.

Assignments of Error Numbers 1 and 3
By these assignments, the defendant contends that the trial court erred in failing to declare a mistrial, give a proper admonition to the jury or grant a new trial resulting from an allegedly prejudicial question propounded to the defendant by the prosecutor.
The state perceived that the defendant was partially attempting to justify the shooting through testimony that his son was afraid of the victim. In order to impeach this defense strategy, the prosecutor asked Morris the following questions during cross-examination:
"Q. Okay. Now, then your son had some problems with him. Now, your son was very scared of him, too, wasn't he?
A. (No audible response.)
Q. Stafford?
A. He had to be scared of him, because he was only a juvenile, and he didn't know what the guy was attacking *1188 him for, and the reason why he was looking for me was to kill me.
Q. Okay. Now, where is Stafford now?
A. I don't know; I've been in jail, Ma'am.
Q. You don't know that he's in Florida with a ... imprisoned for 75 years for executing a police officer?"
Defense counsel immediately objected, and a lengthy argument, outside the jury's presence, revealed that the prosecutor had received this information from "two police officers and one women." Defendant's counsel argued that no policeman was in fact injured in the crime, which was an armed robbery where a man was shot by his assailants, but did not die. The prosecutor countered this by insisting that "Sergeant Welch, and I think it was Sergeant Holland, and/or Taylor," had informed her that "it was an execution-type slaying".
The trial judge, although noting that the question was irrelevant and immaterial but potentially prejudicial, declined to grant a mistrial. The defense counsel noted an objection and requested the court to admonish the jury that the prosecutor's statement was incorrect, and false. The state argued that the court could not instruct the jury that it was a lie because there was no investigation to establish that but, instead, should just tell the jury to disregard the remark. The trial judge admonished the jury to put the question away from its mind and treat it as if never asked. He again reiterated that the jury was not to consider it in any way during its deliberation. The defendant objected to the admonition, claiming it was inadequate.
At the defendant's motion for a new trial, the defendant reasserted that a mistrial was required and brought forth evidence to shown the prosecutor's statement was, indeed, a lie. He called the prosecutor to testify and she again stated that she had been told by some police officers, either Welch, Taylor, Holland or Landry, that the defendant's son had executed a policeman in Florida. The defendant called Officers Welch, Holland and Taylor who each stated that to their knowledge, that they had never told the prosecutor that a police officer had been executed. Holland expressed his belief that the man injured was a bank guard at a savings and loan. Taylor confirmed this, adding that he was not even sure if anyone had died. This evidentiary hearing revealed that these officers believed that the defendant's son was serving time in Florida on charges of armed robbery and attempted murder. These officers admitted that they had spoken to the prosecutor prior to defendant's trial, although they insisted that they did not tell her that the defendant's son had executed a cop.
It appears, therefore, that the prosecutor's trial question to defendant had asserted facts which were untrue, although possibly founded upon a legitimate misunderstanding of her conversations with these officers. However, the defendant's objection challenges not only the inaccuracy of the prosecutor's statement, but also the lack of relevancy of the prejudicial subject matter raised thereby and the state's use of the questioning format to introduce what amounted to testimony by the prosecutor.
The trial court's refusal to grant the requested mistrial was based upon the accurate conclusion that the prosecutor's statement did not fall within the scope of C.Cr.P. art. 770.[1]
*1189 The defendant, however, argues that the prosecutor's statement was so prejudicial that a mistrial was appropriate under C.Cr.P. art. 771, which reads, in pertinent part:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770;
* * * * * *
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
Necessarily, the defendant maintains that the admonition given could not sufficiently counteract the prejudice created in the minds of the jurors.
Initially it must be noted that defendant's son's possible criminal acts have no relevancy to the contested issues in the present case. The son's armed robbery and attempted murder were apparently committed some time after the defendant's alleged act of murder. The prosecutor in fact admitted that her intent was not to show that the defendant's professed fear for his son's safety was a fabrication devised after the fact but, rather, that the son, "a man capable of executing a police officer, can't be so scared as painted by the defendant." This point is hardly relevant to the issue of the defendant's guilt, or intent, R.S. 15:441, nor does it even disprove the defendant's assertion that he feared for his son's safety. The trial court's finding that the question was irrelevant, immaterial and prejudicial suggests that such evidence, even if properly presented, would have been ruled inadmissible. Furthermore, the prosecutor's method of placing this information before the jury was highly improper. In State v. Meshell, 332 So.2d 767, 769 (La. 1976), this Court, quoting an earlier case,[2] observed that:
"It is a grave injustice for a district attorney to propound improper questions, containing prejudicial suggestions or insinuations, without serious intention of having the questions answered, but for the purpose of having the questions make their unfavorable impression and have their prejudicial effect upon the mind of the jury."
In the Meshell case, the inadmissible evidence presented by the prosecutor's questioning related to other crimes committed by the defendant. It fell, therefore, within the mandatory proscription of C.Cr.P. art. 770, and this Court was required by that article to reverse and remand for a new trial. In the present case, the prosecutor's remark referred to other crimes committed by a member of the defendant's immediate family and did not, therefore, fall within the proscriptions of art. 770. When a question does not require automatic reversal, the general rule regarding reversible error due to improper questioning, where the judge has ruled in a defendant's favor and admonished the jury to disregard the question, was stated in State v. Burkhalter, 211 La. 342, 30 So.2d 112 (La. 1947). In Burkhalter, this Court ruled that in such a situation, in order to reverse a conviction, it must clearly appear that the matters complained of are of such an extreme prejudical nature that the damage caused could not be erased from the minds of the jurors and that, as a consequence, the defendant was deprived of a fair and impartial trial. See also State v. Hegwood, 345 So.2d 1179 (La. 1977).
*1190 We are of the opinion that the question asked by the prosecutor was not sufficiently prejudicial to warrant a reversal over and above the trial judge's admonition. First, the question did not even impugn the defendant's character. Second, viewing the evidence in the light most favorable to the prosecution, any rational jury could have found beyond a reasonable doubt that the defendant was guilty of second degree murder. R.S. 14:30.1 See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Morgan, 389 So.2d 364 (La. 1980): State v. Harveston, 389 So.2d 63 (La. 1980). Defendant admitted the shooting and only disputed the manner and circumstances of its occurrence. The evidence circumstantially indicated that the defendant intentionally shot the victim without provocation. Instead, the jury returned a verdict of manslaughter, which implies that it felt the shooting had occurred intentionally, but in sudden passion or heat of blood caused by provocation. R.S. 14:31. This verdict alone indicates that the jury accepted the defendant's intimation that the victim was provoking him personally and through his son, and that it disregarded, as instructed, any reference to the son's character in determining the guilt of the father.
This assignment is without merit.

Assignments of Error Numbers 2 and 3
By these assignments, the defendant argues that the trial court erred in failing to declare a mistrial, or grant defendant's motion for a new trial, on the ground that the prosecutor made reference in closing argument to a witness who never testified.
The controversy involved the prosecutor's reference to Gloria Williams, at whose motel room the defendant had been arrested for the instant charge, during closing argument. Earlier during the trial, during the state's cross examination of the defendant, the prosecutor asked Morris whether he told Ms. Williams anything about the incident. The prosecutor further made reference to a supposed fact that Ms. Williams told police that Morris had made a statement about the incident. Morris denied making any statements to Ms. Williams and the prosecutor dropped the line of questioning.
No other reference to Ms. Williams' knowledge was made during the trial until defense closing argument. At that time, defense counsel, while attempting to demonstrate the inadequacy of the state's case by naming witnesses the state could have called but did not, made reference to the earlier questions propounded to the defendant concerning Williams. He then added that the prosecutor talked to Ms. Williams and knew her whereabouts but still failed to bring her in to ask her what was said to her by the defendant. This implied that Ms. Williams' testimony would not have helped the prosecution and, possibly, that it would have helped the defendant.
The prosecutor, in rebuttal, stated the following:
"[The Prosecutor] ... Point eight: we could have brought in Gloria Williams. Now, Mr. Chafin will tell you that he looked for Gloria Williams for nine days, went all over the State of Louisiana looking for Gloria Williams, and never found ...
[Defense counsel]: Your Honor ...
[The Prosecutor] ... hide nor hair of her."
Defense counsel interposed an objection. In response to defendant's objection the prosecutor added, "Your Honor, the record will show that Gloria Williams was subpoenaed, and she never was served." The court maintained the objection and instructed the jury to disregard the prosecutor's remark concerning Ms. Williams.
Argument of counsel is governed by C.Cr.P. art. 774, which provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
*1191 If argument goes beyond the scope of this article, it falls within the ambit of arts. 770 and 771, supra. See C.Cr.P. art. 774, comment (c); State v. Lee, 340 So.2d 180 (La. 1976). In order for argument outside the scope of art. 770 to be reversible, this Court must be thoroughly convinced that the jury was influenced by the complained of remarks and that they contributed to the verdict. State v. Bretz, 394 So.2d 245 (La. 1981); State v. Light, 392 So.2d 649 (La. 1980). However, this Court has occasionally given the prosecutor some latitude to use argument outside the scope of art. 774 to refute defense argument of like character. See State v. Duke, 358 So.2d 293 (La. 1978); State v. Wright, 344 So.2d 1014 (La. 1977); State v. Jenkins, 338 So.2d 276 (La. 1976); State v. Strange, 334 So.2d 182 (La. 1976); State v. Lockett, 332 So.2d 443 (La. 1976). Compare State v. Hamilton, 356 So.2d 1360 (La. 1978).
In the present case, defense counsel referred to Ms. Williams in order to demonstrate the lack of evidence against his client and thereby create reasonable doubt in the minds of the jurors. But the argument did not end there. Counsel asserted that the prosecutor had talked to Williams and knew her whereabouts but nevertheless failed to bring Williams in as a trial witness. While the reference to the prosecutor interviewing Ms. Williams might be a proper inference to be drawn from the prosecutor's earlier questioning of the defendant, the testimony does not support the assertion that the prosecutor knew her whereabouts but failed to call her as a witness. The inference to be drawn from the unsupported argument did more than just imply that the prosecution had not met its burden of proof. It implied that the prosecution had evidence available to it that it was hiding from the jury, possibly due to its exculpatory nature.
The prosecutor, in rebuttal, attempted to refute the claim of availability by asserting that the state had been unable to subpoena Ms. Williams to testify notwithstanding a diligent attempt to do so. Thus, the prosecutor did nothing more than use an assertion not supported by the trial testimony to refute a like assertion made by the defendant. While we expressly disapprove of the actions of both the prosecutor and defense counsel and feel that the problem would best have been settled via a prosecutorial objection during defense argument, we note that the complained of argument does not fall within the scope of that which is proscribed by C.Cr.P. art. 770, N.1, supra. Under the circumstances, since defense counsel initially made an assertion outside the record, we conclude that the state was also entitled to so refute it in rebuttal. See State v. Wright, supra. Furthermore, if any prejudice occurred, it was sufficiently cured by the trial judge's admonition to the jury that it was to attach no significance to the prosecutor's reference to Ms. Williams.
This assignment is without merit.
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
DENNIS, J., concurs with reason.
LEMMON, J., dissents and assigns reasons.
REDMANN, J., pro tem., dissents with reasons.
CALOGERO, J., dissents for reasons assigned by LEMMON, J.
LEMMON, Justice, dissenting.
The grossly prejudicial "question" by the prosecutor was irrelevant (and also inaccurate) and constituted an implied assertion that simply could not be erased from the minds of the jurors by an instruction to disregard.[1] Defendant could not thereafter receive a fair trial before this tainted jury.
This court's approval of such tactics simply encourages future use of hearsay and *1192 irrelevant statements, in the guise of questions, to suggest guilt by association.[2]
REDMANN, Justice Pro Tem., dissenting.
This Court is unconstitutionally constituted and an accused is denied due process of law by his or her case's being referred to it instead of to the Louisiana Supreme Court as constituted by La. Const. Art. 5 §§ 1, 3, and 4, to which this Court should order this case referred.
See the writer's dissent, State v. Petterway, La. 1981, 403 So.2d 1157, 1161.
NOTES
[*] Judges William V. Redmann and Thomas J. Kliebert of the Fourth Circuit Court of Appeal, and Judge Cecil C. Cutrer of the Third Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] Although the prosecutor made reference to another crime, it was not committed or allegedly committed by the defendant.

"Art. 770. Prejudicial remarks; basis of mistrial.
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official during the trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissable;
"(3) The failure of the defendant to testify in his own defense; or
"(4) The refusal of the judge to direct a verdict."
[2] State v. Frazier, 165 La. 758, 765, 116 So. 176, 178 (1928).
[1] The implied assertion was that defendant's son was serving a prison term in Florida for executing a police officer.
[2] The prosecutor admitted that she asked the "question" (characterized by the trial judge as "highly objectionable") for the purpose of discrediting defendant's family.