452 So.2d 1225 (1984)
STATE of Louisiana, Appellee,
v.
Charles JACKSON, Appellant.
No. 16164-KA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1984.
*1229 J. Rush Wimberly, III, Arcadia, for appellant.
William J. Guste, Jr., Atty. Gen., John C. Blake, Dist. Atty.; H. Russell Davis, Asst. Dist. Atty., Arcadia, for appellee.
Before PRICE, HALL and NORRIS, JJ.
NORRIS, Judge.
Defendant, Charles Jackson, appeals a jury conviction of manslaughter in violation of La.R.S. 14:31 and a resulting sentence of eighteen years at hard labor assigning four errors:
(1) The State of Louisiana failed to meet its burden of proving beyond a reasonable doubt that the killing was not perpetrated in self defense, and that the homicide was not justified;
(2) The State of Louisiana failed to meet its burden in proving that a homicide was committed;
(3) The sentence given to the defendant was excessive in violation of United States Constitutional Amendment VIII and Louisiana Constitution of 1974, Article I, Section 20; [and]
(4) The Court failed to sustain numerous objections during the course of the trial and thereby prejudiced defendant's right to due process under United States Constitutional Amendment 5 and Louisiana Constitution of 1974, Article 1, Section 16.

FACTS
During the evening of September 11, 1982, six people, including the defendant and the victim, William Curtis Brown, met at Logan's Place, a nightclub located in Shiloh, Louisiana. After deciding to go to Sheppard's Inn, another nightclub, the group left Logan's Place in separate cars to leave the vehicle owned by one of the females. At the residence where the vehicle was left, the defendant and Johnny Lee Boston began arguing; however, this argument ceased prior to the group's leaving in one vehicle for Sheppard's Inn. The group was seated in the vehicle as follows: Sevetra Combs was in the driver's seat; Octavian Cockerham in the front middle seat; the defendant in the front passenger seat; Brown in the left rear passenger seat; Ann Venzant in the middle back seat; and Johnny Lee Boston in the right rear passenger seat.
During the drive to Sheppard's Inn, the defendant and Brown began to argue. However, the occupants of the car managed to convince them to cease their arguing. When the group arrived at Sheppard's Inn, the driver stopped the vehicle on the opposite side of the highway from the club. Brown then reached over the seat of the car and cut the defendant on his head. Brown then exited the vehicle pursued by the defendant and a fight ensued with the defendant striking Brown several times with his fists and rendering him unconscious. Thereafter, the defendant, who was wearing sneakers, was pulled off of Brown, who remained unconscious in the ditch. However, the defendant broke free and began stomping Brown in the head and face until he was again pulled away.
Brown, still in an unconscious state, was then taken to the Bienville General Hospital in Arcadia, and later transferred to the LSU Medical Center in Shreveport by ambulance. Upon his arrival at the LSU Medical Center, Brown was examined and his neurological condition was found to be devoid of upper level mental functions. Only spinal cord reflexes were found to be present; in other words in layman's terms, Brown was a mere "vegetable". Brown remained hospitalized in this condition until October 6, 1982, when he died from pneumonia, a secondary complication of the initial head injury inflicted by defendant.
Defendant was originally indicted for second degree murder in violation of La. R.S. 14:30.1, tried by jury, convicted of manslaughter[1] in violation of La.R.S. 14:31 and sentenced to 18 years at hard labor.

*1230 ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant contends that the state failed to meet its burden of proving beyond a reasonable doubt the essential elements of the crime of manslaughter, particularly arguing that the state failed to prove beyond a reasonable doubt that the homicide was not committed in self defense.
A defendant in a homicide prosecution who asserts that he acted in self defense does not have the burden of proof on that issue because the state bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense. State v. Brown, 414 So.2d 726 (La.1982); State v. Collins, 306 So.2d 662 (La.1975); State v. Patterson, 295 So.2d 792 (La.1974).
La.R.S. 14:20 provides:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
When this issue is presented for review on appeal, the relevant inquiry becomes whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Brown, supra.
The facts of this homicide were developed at trial through the testimony of the occupants of the car, other onlookers and the defendant.
Sevetra Combs testified that while she was driving the vehicle to Sheppard's Inn, the defendant and Brown began arguing. After she parked the car on the shoulder of the road, the defendant and Brown exited the vehicle with the defendant advancing on Brown. This witness testified that Octavian Cockerham attempted to restrain the defendant at this point but that when he let the defendant go, the defendant knocked Brown to the ground hitting him in the face about three times. At this point, this witness left the scene to obtain assistance. This witness testified that she never saw Brown with a knife but that she did see Brown reach over the seat of the car toward the defendant. After this occurred, the defendant stated that Brown had cut him. This witness testified further that Brown never got a "lick in" after the defendant got out of the car. She did state that after the fight was completed she observed three cuts on the defendant's head.
Elizabeth Ann Venzant testified that the defendant exited the vehicle before Brown. She testified that the defendant pushed *1231 Brown, who had a knife in his hand. She saw the knife hit the defendant's head after which the defendant pushed Brown and he fell. She testified that the defendant kept beating Brown after he was knocked out. She further stated that Octavian and John Lee Boston pulled the defendant off of Brown after which the defendant got loose, ran back, and began stomping the unconscious Brown around the face.
John Lee Boston testified that the defendant and Brown began arguing in the car. This witness saw Brown reach toward the defendant in the front of the car. Then he observed defendant jump out of the car, run around it, and knock Brown in the ditch after which he saw the defendant standing over Brown who was lying in the ditch. At that point defendant was hitting Brown with his fist. When this witness tried to pull the defendant off of Brown, the defendant hit him. Octavian then pulled the defendant off of Brown after which the defendant pulled loose and returned to Brown stomping him in the head with the heel of his foot. At this point, Brown offered no resistance and appeared to be unconscious. This witness then left to tell someone to call the police. On his way out of the club, he met the defendant who hit him again.
Another observer who was a nephew of Brown, Lynn Rushing, stated that he observed the defendant standing holding Brown by the legs and dragging him out to the middle of the road. This witness stated that he had observed the defendant stomp Brown in the face with cowboy boots.
A.D. Brice and Irene Venzant, who took Brown to the hospital in Arcadia, both testified that he was unconscious and remained in that condition throughout their contact with him. Their testimony was corroborated by the ambulance attendant who accompanied Brown to LSU Medical Center.
In a statement given to officers the day following his arrest for second degree battery, the defendant stated that he and Brown had started arguing outside Sheppard's Inn. When the defendant attempted to walk off, someone told him to look out, he turned around and was cut in the head and the face by Brown. After he was cut, the defendant began fighting with Brown who struggled for some time but was overcome by the defendant. The defendant stated that he tried to get away from Brown and walk off but that Brown would not allow this. However, at trial defendant's version of the events surrounding the events was somewhat altered. He stated that he had argued with Brown in the vehicle and thought that the argument was over when they arrived at Sheppard's Inn. However, when they arrived, Brown reached over the seat and cut the defendant on the head. He then got out of the car and Brown cut the defendant on the eye. At this point, the defendant started fighting with Brown, who was cutting at his legs, causing defendant to kick at Brown. After the defendant saw that Brown was unable to fight further, he quit fighting and went inside to clean up. On cross examination, the defendant admitted that Octavian was holding him and that after Octavian let him go he was mad causing him to go for Brown. While the defendant admitted kicking at Brown, he denied stomping him.
The deputy who investigated the crime admitted to returning to the scene of the incident and finding a comb, cap, sunglasses and a knife in the ditch. While the sunglasses and comb were introduced into evidence, the knife and the cap were lost at some point after their discovery.
After hearing all of the testimony, the jury found the defendant guilty of manslaughter. In order for us to reverse this conviction, it would be necessary that we evaluate the credibility of the witnesses and overturn the jury on its factual determination of guilt. This is not the function of this court on appeal. See State v. Richardson, 425 So.2d 1228 (La.1983). Because it is the role of the fact finder to weigh the respective credibilities of the witnesses, an appellate court will not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under *1232 the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
It is obvious that the jury rejected the defendant's version of the occurrence. While it is obvious that Brown had a knife and that the defendant was cut with it prior to his initiation of the fight outside of the car, the jury obviously accepted the facts as presented by the other witnesses and concluded that the defendant was not justified in his responsive actions. First of all, there is sufficient evidence for the jury to have concluded that the defendant could have escaped any danger by retreating from Brown rather than by attacking him. Although there is not an unqualified duty to retreat, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. Brown, supra. There is ample testimony to support a finding that even after the defendant had subdued Brown initially and rendered him unconscious he went back and stomped him about the head. Thus, there is ample evidence that would support an inference that the defendant could not reasonably have believed he was in danger of losing his life or receiving great bodily harm after he and Brown exited from the car; in short, he could have easily saved himself from any danger without resorting to deadly force.
After reviewing the evidence in accordance with the standard set forth in Jackson v. Virginia, supra, we conclude that the state met its burden of proof and that based upon the evidence presented at trial, a rational trier of fact could have found, beyond a reasonable doubt, that the state proved the homicide was not committed in self defense.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment, the defendant argues that the state failed to prove that a homicide was committed. While admitting that the victim was injured, it is argued that he died of pneumonia some three weeks later and that the state did not prove beyond a reasonable doubt that the actions of the defendant caused the pneumonia which caused death. It is argued that because no evidence was shown as to the health of the victim prior to admission or immediately after the admission to the hospital that a reasonable doubt exists as to this causative factor.
The state offered the testimony of Dr. Brian Keith Willis, a first year surgery resident at LSU Medical Center, who was accepted by the court as an expert "medical doctor" without objection by the defendant. He testified that he examined the victim upon admission finding multiple facial lacerations and fractures and severe neurological deficients including the absence of upper level mental functions and the presence of only spinal cord reflexes and some brain stem reflexes. This indicated that the victim was in a vegetative state with sustaining heart rate and blood pressure and some spontaneous respirations. This witness treated the victim until the end of September, when he was transferred to cardiothoracic surgery service. He again examined the victim on the night of his death as well as his medical records. It was his firm opinion that the victim died of pneumonia, a secondary complication of and directly related to his head injury. He testified that this is a very common development in a head injury of this severity because the patient is unable to clear bronchial secretions which trap bacteria behind those secretioins and foster pneumonia.
A similar argument was raised in State v. Durio, 371 So.2d 1158 (La.1979). In response, the Durio court stated:
In State v. Wilson, 114 La. 398, 38 So. 397 (1905) a similar argument was raised. In that case defendant was found guilty of murder when the victim he shot subsequently died from pneumonia. Based on medical testimony which indicated that the victim would not have contracted pneumonia but for the gunshot wound, this Court held that causation had been established. The court found that if the *1233 defendant "hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient." A similar standard for determining causation in fact is approved by LaFave and Scott in their treatise on criminal law. The test adopted there is "Was the defendant's conduct a substantial factor in bringing about the forbidden result." LaFave and Scott, Criminal Law, § 35, p. 250 ff. See also Focht, Proximate Cause in the Law of Homicide, 12 Cal.L.Rev. 19, 27 (1938).
It is clear from the unrebutted and uncontradicted testimony of Dr. Willis that the legal cause of the victim's death was the injuries inflicted on him at the time of the beating because the pneumonia was caused by the initial injury, a common occurrence after injuries of this severity. This witness was competent to testify as to the cause of death. See State v. Winzer, 354 So.2d 533 (La.1978).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant next argues that his sentence is excessive in violation of the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution of 1974.
Article I, § 20 of the Louisiana Constitution of 1974 protects a defendant against the imposition of excessive punishment. A sentence constitutes excessive punishment if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). To prevent the possible imposition of excessive punishment and to guide the trial court in its sentencing tasks, the legislature enacted La.C.Cr.P. Art. 894.1 which sets forth factors which justify a sentence of imprisonment and other factors which tend to indicate suspension of sentence or probation as appropriate. State v. Smith, 430 So.2d 31 (La.1983). In imposing sentence, a trial judge must comply with the mandatory requirements of La.C.Cr.P. Art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and the factual bases therefor. State v. Jones, 381 So.2d 416 (La.1980). However, this article does not require that the trial judge set forth for the record all of the factors listed in the statute which were accorded weight by him in determining to impose a sentence of imprisonment. State v. Jacobs, 383 So.2d 342 (La.1980). While a sentence may be vacated and a case remanded for re-sentencing when the reasons for an apparently severe sentence in relation to the particular offender and the actual offense committed do not appear in the record, when Article 894.1 has been complied with a sentence should not be set aside as excessive in the absence of an abuse of the wide discretion accorded a trial judge in the imposition of sentences within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983).
There is no need for a remand in this case. The trial judge in sentencing the defendant articulated the following factors as having been considered in imposing the sentence. The trial judge first noted the seriousness of the offense and the risk that the defendant, if released on probation, would commit another crime. It was further found that to suspend this sentence would result in the deprecation of the seriousness of the crime which resulted in the death of the victim. The trial judge found that the crime caused serious harm and that it was contemplated by the defendant that it would cause serious harm. The trial judge specifically found that the defendant did not act under strong provocation but did recognize the fact that the victim's initial actions may have started the incident. However, the trial judge found that the defendant's responsive actions were excessive and there were no "substantial" grounds that would tend to excuse or justify the defendant's conduct. The trial judge further considered the defendant's criminal record which includes convictions for extortion and conspiracy to commit aggravated *1234 kidnapping and simple battery as well as numerous other arrests. The trial judge finally concluded that if angered sufficiently again, that the defendant's conduct was likely to recur and that the term of imprisonment would cause no excessive hardship. It was also noted that because of defendant's second felony offender status, that a suspended or probated sentence was precluded. We conclude that the trial judge adequately complied with Article 894.1.
Our review of the record leads us to further conclude that this sentence is commensurate with, rather than grossly disproportionate to, the severity of defendant's offense. The extended imprisonment is not needless and purposeless but is imposed to negate the defendant's opportunity to commit such crimes in the future. The sentence is adequately particularized to this particular defendant in light of his particular crime. Consequently, we find that the trial judge did not abuse his discretion, and the sentence is not excessive.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, defendant argues that the trial court erred in overruling several defense objections made during the course of the trial.
First, the defendant contends that questions posed to a deputy sheriff regarding statements made to him were prejudicial hearsay. The state first asked Deputy McCarley, the officer dispatched after the disturbance was reported, if anyone was able to tell him what had happened. The defense objected and the court instructed the state to rephrase the question. The court then asked if the witness had made any determination about this disturbance. When the deputy answered that he had, the state asked what he had been told. The defense objected again. The state countered that this type of testimony was admissible to show what the officer had done in his investigation. The court overruled the objection.
Hearsay is testimony made in court regarding an out of court statement, the statement being offered as an assertion to show the truth of the matters asserted. State v. Ratcliff, 416 So.2d 528 (La.1982). Evidence is not hearsay if introduced to show that an utterance occurred or that a conversation has taken place rather than to show the truth of the matter. State v. Ratcliff, supra. Furthermore, a police officer may refer to a statement made to him by others in order to explain the sequence of events leading to the arrest of the defendant. See State v. Tucker, 405 So.2d 506 (La.1981).
The first question objected to merely required a yes or no answer; it was only seeking to show that an utterance had occurred or that a conversation had taken place. The second objected to statement referred to a statement made to the deputy in order to explain the sequence of events leading to the arrest of the defendant. Neither of these statements was inadmissible hearsay and the objections were properly overruled.
Next, the defendant asserts that statements made by the defendant to Deputy McCarthy to the effect that he was going to whip the victim were inadmissible hearsay. The record reflects that in the course of his investigation at the scene, the officer did talk to the defendant who in fact stated that he had "whipped" the victim. However, defense counsel failed to make any objections to this testimony; accordingly its admissibility is not subject to our review. La.C.Cr.P. Art. 841; State v. Herrod, 412 So.2d 564 (La.1982).
The defendant additionally argues that the state failed to carry its burden of proof regarding the admissibility of the defendant's recorded statement made to deputy Raley and admitted into evidence. At the time that the statement was offered into evidence, the defendant did not object to the statement on any basis. In fact, when the state for the record submitted that if a defendant does not file a motion to *1235 suppress timely he is prevented from objecting to the admissibility of any statement on the grounds that might be asserted by a motion to suppress and that it had no burden of proving that the statement was voluntary, not only did the defense not object but defense counsel responded, "I agree with that one-hundred percent." Accordingly, this issue is not properly before us for review. La.C.Cr.P. Art. 841; State v. Herrod, supra.
The defendant further argues that under La.C.Cr.P. Art. 768 the state was required to give notice to the defendant of its intent to introduce a confession or inculpatory evidence. Again, the defense did not object to the introduction of this statement on that basis. Furthermore, the state supplied the required notice timely. This argument is meritless. The defendant next argues that he objected to Dr. Willis' testimony, both as to his qualifications as a pathologist (a specialist in cause of death) and to medical records written by others, arguing that his opinion based on the hospital records of the victim is outside any hearsay exceptions and should not be allowed. First of all, we note that Dr. Willis was qualified as an expert witness without objection from the defendant. The only objection made at trial was to this particular witness' testifying from those records and to the admissibility of those records. In his brief, the defendant seems to recognize the hospital records exception to the hearsay rule. La.R.S. 13:3714. When hospital records are properly certified they are admissible in criminal cases as well as civil cases under La.R.S. 13:3714. State v. Trahan, 332 So.2d 218 (La.1976). The records were properly certified and were properly admitted in this case. See also La.R.S. 15:457. The defendant's argument that the doctor's opinion as to the cause of death based in part on the medical records should not have been allowed disregards the fact that this witness was the treating physician of the victim from the time of his admission to the hospital until six days prior to his death, during which time he had personal knowledge of his condition. Furthermore, an expert medical witness is entitled to review medical records and formulate an opinion therefrom. [Compare State v. Titus, 358 So.2d 912 (La.1977) where it was held that a properly qualified expert witness might well refer to a chart which he understood to arrive at his expert opinion, and State v. Nicolaus, 340 So.2d 296 (La.1976) where it was held that a medical opinion based in part upon hospital records did not render it inadmissible.] In fact, medical experts are expected to rely in part on tests and examinations performed by others in arriving at their opinions and this reliance does not render their opinions inadmissible. State v. Andrews, 369 So.2d 1049 (La.1979). This argument is meritless.
Defendant next argues that it was error to allow Deputy McCarthy to testify as a rebuttal witness because he had not been subject to the sequestration rule. It is further argued that his testimony went beyond the scope of rebuttal and was prejudicial.
La.C.Cr.P. Art. 764 provides for the sequestration of witnesses upon the request of either the state or the defendant or upon the court's own motion and gives the trial court the authority to modify such orders in the interest of justice. The purpose of sequestration is to assure that a witness will testify from his own knowledge without being influenced by the testimony of prior witnesses and to strengthen the role of cross examination in developing facts. State v. Warren, 437 So.2d 836 (La.1983). Absent any evidence that the testimony was tainted by a violation of a sequestration order, the trial judge may properly rule that the testimony shall not be precluded. State v. Parker, 421 So.2d 834 (La.1982). Deputy McCarthy's testimony on rebuttal concerned matters other than the details of the crime itself. Consequently, it was not tainted by his having heard any prior testimony of other witnesses, and the purpose of the rule of sequestration was not violated by his having been called. This argument is meritless.
*1236 Defendant next argues that the testimony of Deputy McCarthy was beyond the scope of rebuttal and was prejudicial to the defendant. Our review of the record reveals that no objections were made to any facet of the content of this testimony. This testimony is not subject to our review. La.C.Cr.P. Art. 841; State v. Herrod, supra.
Finally, defendant argues that the state's rebuttal closing argument went beyond the scope of the defendant's closing argument and was thus prejudicial to the defendant. The scope of argument on rebuttal is governed by La.C.Cr.P. Art. 774 which provides that such argument shall be confined to answering the argument of the defendant. If argument goes beyond the scope of this article, it falls within the ambit of La.C.Cr.P. Arts. 770 and 771. See La.C.Cr.P. Art. 774 comment (c); State v. Morris, 404 So.2d 1186 (La.1981). In order for argument outside the scope of Article 770 to be reversible the reviewing court must be thoroughly convinced that the jury was influenced by the complained of remarks and that they contributed to the verdict. State v. Morris, supra. The prosecutor may be given some latitude to use argument outside the scope of Article 774 to refute defense argument of like character. State v. Morris, supra.
During argument, defense counsel referred to the defendant's testimony regarding why he was kicking the victim and indicated that the reason why the defendant was kicking was because he thought the victim was trying to cut him with the knife. In the state's rebuttal, the prosecutor referred to defendant's statement given to Deputy Raley which was admitted into evidence in an attempt to rebut defense counsel's argument concerning the reason for the defendant's having kicked the victim contending that the earlier statement was contradictory to defendant's trial testimony. Although defense counsel did not refer to this statement as such during his argument, the referral to it by the state was proper rebuttal to refute the defendant's explanation of the kicking. This argument is without merit.
For the foregoing reasons, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.