339 So.2d 741 (1976)
STATE of Louisiana
v.
Leslie JAMES.
No. 58178.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*743 Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Lawrence J. Centola, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
An Orleans Parish Grand Jury indicted the defendant, Leslie James, with first degree murder, a violation of LSA-R.S. 14:30(4). The jury convicted him of second degree murder and the judge sentenced him to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.
The defendant appeals, relying on sixteen assignments of error. Three assignments of error perfected in the trial court are not briefed or argued, and, therefore, are considered abandoned. State v. Blanton, La., 325 So.2d 586 (1976); State v. Carlisle, La., 315 So.2d 675 (1975).

ASSIGNMENTS OF ERROR NOS. 2 AND 3
In a Supplemental Motion to Quash, defense counsel alleged that the responsive verdicts of second degree murder and manslaughter are unconstitutional as applied to a violation of LSA-R.S. 14:30(4) in that they are not lesser and included grades of the offense of killing more than one person. See LSA-C.Cr.P. Art. 814, subd. A(1). The court denied his motion.
His argument is predicated on the erroneous premise that the defendant was indicted for two homicides.
The indictment reads:
". . . That one LESLIE JAMES. . . committed first degree murder of one, HENRY MARSHALL, and one MICHELLE LACOSTE . . ."
In brief the State states that an indictment for a murder based on LSA-R.S. 14:30(4) has to designate two victims. We disagree. A short-form first degree murder indictment only requires the name of one victim, the victim with whose murder the defendant is charged. LSA-C.Cr.P. Art. 465, subd. A(31). This is so because LSA-R.S. *744 14:30(4) defines first degree murder as the killing of a human being. The confusion stems from the requirement that the defendant have the specific intent to kill or to inflict great bodily arm on more than one person to be convicted under LSA-R.S. 14:30(4)[1]. However, the short form indictment need not reflect the name of the second person. That there was a second intended victim must, of course, be proved at the trial to warrant a conviction.
This indictment is not invalid merely because a second victim was named. Our jurisprudence favors the validity of an indictment when the defendant has adequate notice of the crime charged. State v. James, La., 305 So.2d 514 (1974); State v. Scott, La., 278 So.2d 121 (1973). This indictment informed the defendant of the nature and cause of the accusation against him. Moreover, the addition of the other victim provided the defendant with additional information concerning the crime charged.
The constitutional attack on the responsive verdicts has no merit. The crimes of second degree murder and manslaughter are lesser and included grades of first degree murder.
Defense counsel also filed a Motion and Order to Elect. Its purpose was to make the State elect upon which of the two victims named it would seek a second degree or manslaughter verdict. The defendant is again proceeding on the assumption that the State was trying the defendant for two murders. Since the State was attempting to seek only a first degree murder conviction, the court properly denied the motion.
Although we agree with the defense contention that the language of the indictment failed to specify which of the two homicides was basic to the charge, we do not believe that the defendant was so prejudiced that his conviction should be overturned. See C.Cr.P. Art. 921. It was not crucial for his defense to know which of the homicides was basic, since the killings occurred within minutes of each other and both were relevant to the first degree murder charge. There is no material way in which the defense would have differed had counsel known the identity of the principal victim.
The defense raises the issue of double jeopardy. This issue is premature. The State has not subsequently charged the defendant with a second homicide arising from the criminal episode.
We conclude the assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 4, 5, 6 AND 9
The trial judge upheld the State's challenges for cause as to three prospective jurors. The defendant submits that this was reversible error because these jurors were not sufficiently opposed to capital punishment. See, LSA-C.Cr.P. Art. 798(2). He relies on Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), which held:
". . . [T]hat a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."
The trial court did not sentence the defendant to death, therefore, he does not have a valid complaint of a Witherspoon violation. State v. Rester, La., 309 So.2d 321 (1975); State v. Adams, La., 302 So.2d 599 (1974); State v. Fallon, La., 290 So.2d 273 (1974).
Defense's fourth complaint arose when the court upheld the State's challenge of a prospective juror, Robert Nuss. The basis for this challenge apparently was the *745 juror's partiality and his refusal to accept the law as given him. LSA-C.Cr.P. Art. 797. The voir dire examination of this juror in pertinent part is as follows:
"BY THE COURT: . . . Now, are there any glaring inconsistencies, any real problems that you feel you should point out to the Court or to counsel, any real divergence?
"BY A JUROR: The fact that two witnesses have been excused, and one possible involved, I don't think I could weigh their evidence as true. I think they could be looking for a way out.
"BY THE COURT: Do you understand that's for you to decide? . . . The question should beis whether you're going to reject somebody's testimony just in toto because they have been granted immunity. Do you feel that strongly about it, that you would be unable to consider their testimony at all? Is that what you're saying? (Juror nodded affirmatively.)
"BY THE COURT: . . . [T]hat the judge should instruct the jury that accomplice testimony is of the type that has to be scrutinized very carefully. Now, even if I tell you that at the conclusion of the trial, do you feel that you still couldn't weigh the evidence in the case? "BY A JUROR: As of right now, the scale is tilted. I wouldn't be able to listen to their testimony because of their involvement in the case." (Tr. pp. 10-12).
In State v. Jones, La., 315 So.2d 650 (1975), we stated:
"The trial judge is vested with a wide discretion in determining the qualifications of jurors to serve at a trial. The trial judge can bring to bear on this determination his estimate of a prospective juror, his observation of demeanor, and his knowledge of local trial conditions. Absent a clear showing of abuse of discretion, the trial judge's ruling should not be disturbed on appeal, (citations omitted)"
A review of the entire voir dire examination reveals no abuse of discretion.

ASSIGNMENTS OF ERROR NOS. 7, 8, 18, AND 19
Defense counsel propounded the following question to prospective jurors on voir dire:
"If it comes to pass that you were to find that Leslie James was justified in the killing of one, he urges to you self-defense, and you were to find from the evidence that he was justified in killing one, but not the other, then a serious element is missing. He did not intend to kill two people. Since the State has elected to proceed in this matter, then you would have to forgive him for one and find him not guilty, as I appreciate the law. And if every element of the crime is the killing of more than one person. Could you find him not guilty under those circumstances?" (Tr. pp. 8-9; see, Tr. pp. 12-13, 15-16, and 23).
The State objected to this question as being an incorrect statement of the law.
By this question counsel inferred that if the jury found him innocent of first degree murder, they must return a verdict of not guilty. He failed to outline the other two responsive verdicts of guilty of second degree murder or guilty of manslaughter. LSA-C.Cr.P. Art. 814, subd. A(1). The court correctly excluded this question. See LSA-C.Cr.P. Art. 786.
He further argues that the court erred in refusing to give his special requested charges. (Special written charges numbered 17, 18, and 19). Substantially, these charges state that there are only two responsive verdicts to the crime charged, namely, guilty and not guilty.
A court is required to give the special charge requested only if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. LSA-C.Cr.P. Art. 807. Since the requested charges do not contain correct legal principles, they were properly denied. See LSA-C.Cr.P. Art. 814, subd. A(1).

*746 ASSIGNMENT OF ERROR NO. 11
The defendant objected to the trial court's ruling which allowed the State to exhibit four photographs of the victims to the jury. (S-2, S-3, S-A, S-5). Three of the pictures are black and white photographs of both victims at the scene of the crime and one is a color photograph of Henry Marshall at the morgue.
Defendant made no objection to the introduction of the photographs in evidence. He did object, however, when the State exhibited the photographs to the jury.
The defendant complains that the photographs are gruesome and tended to prejudice his defense.
The general rule is that the trial jury is entitled to view photographic evidence introduced during the trial. In its fact-finding and guilt determination function, it is entitled to the benefit of all the evidence.
Thus, the trial judge did not err in allowing the jury to see the photographs. The defense arguments more properly relate to the admissibility of the photographs. The arguments, of course, are not viable since the photographs were admitted in evidence without objection.

ASSIGNMENTS OF ERROR NOS. 12, 13, 14, 15, 17, 18, AND 19
The defendant assigns as error the court's sustaining a State objection which precluded his questioning five defense witnesses about the victim's reputation for violence.
As his own first witness the defendant testified that although he had not been directly threatened by Marshall, he heard rumors that Marshall intended to harm him. In an attempt to settle any differences between them, the defendant and his girl friend, Judy Kahoe, got into a car with the two victims. The defendant testified that, after a short ride, Marshall leaned forward. He then shot him, thinking he was reaching for an automatic pistol, which he believed was kept under the dashboard.
On re-direct, Judy Kahoe testified that she did not see Marshall move forward.
The State objected to questioning the witnesses about the victim's character on the basis of LSA-R.S. 15:482, which states:
"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
In State v. Green, La., 335 So.2d 430 (1976), we defined the term "overt act" as follows:
". . . [T]he term `overt act,' as used in connection with prosecutions where the plea of self-defense is involved, means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. See State v. Brown, 172 La. 121, 133 So. 383 (1931)."
And in State v. Lee, La., 331 So.2d 455 (1975), we stated:
". . . [W]hen appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted him by law."
The self-serving, contradicted testimony of the defendant that Marshall leaned toward a place the defendant believed he kept a gun is not appreciable evidence tending to establish an overt act. The trial judge properly excluded the contested evidence.
Defense further contends that the judge erred in refusing to give special charges submitted. These charges would have instructed the jury that evidence of prior threats and bad character of the victim should be considered as relevant in proving the defendant's fear of an impending attack by the victim.
The judge charged the jury that they must give fair and impartial consideration to all the facts in the case, and to look to all the circumstances surrounding the defendant to decide if he had a reasonable belief that his life was in danger.
*747 The requested charge was contained in the charge given on self-defense, and therefore, was properly excluded. LSA-C.Cr.P. Art. 807.
The trial judge sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. This sentence is illegal. The appropriate sentence for a second degree murder committed on November 17, 1974, is life imprisonment at hard labor without eligibility of parole, probation, or suspension of sentence for a period of twenty years. LSA-R.S. 14:30.1. Thus, the sentence must be vacated and the case remanded for the imposition of the legal sentence.
For the reasons assigned, the conviction is affirmed, and the sentence is vacated. The case is remanded with instructions that the defendant be resentenced to life imprisonment without benefit of parole, probation, or suspension of sentence for twenty years.
TATE, J., as to Assignments 4, 5 or 6, I concur for the reasons assigned in my concurring opinion in State v. Miles, La., 339 So.2d 735 (1976).
CALOGERO, J., dissents.
DENNIS, J., concurs, disagreeing with treatment of assignments 2 and 3.
CALOGERO, Justice (dissenting).
The majority holds, as to assignments of error two and three, that the trial judge did not err when he refused to grant defendant's motion to quash. I disagree with this finding.
The indictment charged that defendant James "committed first degree murder of one, HENRY MARSHALL, and one, MICHELLE LACOSTE." This indictment charges defendant with the first degree murder of two people, Marshall and Lacoste, and, as such, violated the joinder provisions of the Code of Criminal Procedure which at the time of defendant's indictment and trial stated that "[n]o indictment shall charge more than one offense . ." Art. 493. The state takes the position, however, that the indictment charged not two first degree murders but one first degree murder, a violation of R.S. 14:30(4) which proscribes "the killing of a human being [w]hen the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." But an indictment charging this crime should have asserted that defendant killed only one of the two people (either Marshall or Lacoste), while having the specific intent to kill both Marshall and Lacoste. As it stands, this indictment improperly charges two murders, a clear violation of Code of Criminal Procedure Article 493, and should have been quashed.
Defense counsel attempted to force the state to reveal which person was the victim of the murder charged when he filed a Motion and Order to Elect.[1] Although the victim of a murder must be named in order for the indictment to be held valid, see C.Cr.P. art. 465, the trial judge upheld the state's refusal to specify which murder he was being tried for, and the majority holds that "[i]t was not crucial for [James'] defense to know which of the homicides was basic, since the killings occurred within minutes of each other and both were relevant to the first degree murder charge." The majority solution ignores the fact that a prosecution for murder presupposes a charge of murder of one person; it is this fact which allows a defendant to decide how to defend against the charge, which aids the trial judge as he rules on the admissibility of evidence, and which lays the foundation for future determinations of jeopardy. It is imperative in a murder trial for the state to disclose just who the victim of the charged homicide was.
The infirmity of this indictment was highlighted when the jury returned a verdict of "second degree murder." It is impossible to know from the unexplained verdict *748 whether defendant has now been convicted of killing Marshall or of killing Lacoste and, thereby, of course, acquitted of the first degree murder of one or the other. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). This situation raises the specter of double jeopardy should the state attempt to further prosecute defendant on the basis of this incident, and it violates, I believe, the notice requirements implicit in defendant's right to due process of law.
For this reason, I must dissent.
NOTES
[1] "(4) When the offender has a specific intent to kill or to inflict great bodily harm upon more than oneperson;"
[1] Specifically, the motion asked "the Court to order the State of Louisiana to make an election as to which of the two named victims in the instant Indictment does the State seek a second degree murder verdict or manslaughter verdict."