347 So.2d 1108 (1977)
STATE of Louisiana
v.
Robert KING.
No. 59207.
Supreme Court of Louisiana.
June 20, 1977.
*1109 Robert Zibilich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Robert King was charged by bill of information with the second degree murder of Michael Shields in violation of La.R.S. 14:30.1. On November 4, 1975, after trial by jury, defendant was found guilty of the responsive verdict of manslaughter. Thereafter defendant was sentenced to serve ten years at hard labor in the custody of the Department of Corrections. He appeals his conviction and sentence to this Court, relying upon one assignment of error.
Defendant admitted that he shot and killed the victim, Michael Shields, outside Kelley's Bar on D'Hemecourt Street in the City of New Orleans at about one o'clock on the morning of July 23, 1974. His purported justification was that he did so in self-defense. He testified that on the evening in question Shields walked up to him in the bar flashing a gun and told him to step outside. He said that when he started going outside, Shields went behind him with a pistol. He ducked into the alley behind the bar, heard Shields expressing dismay over his whereabouts, and then he exited the alley and started shooting at Shields.
Defendant also presented the testimony of one Gregory Mascaro, who more or less verified his story. Mascaro said that on the night in question Michael Shields walked up to him, put a gun in his side and stated to him that he was "down on me." He said he heard Shields also threaten defendant King, and that Shields asked both Mascaro and the defendant to step outside. The state presented seemingly contrary evidence in the testimony of three women. One of these, Lynn Harmon, said that the victim did not have a gun or a knife, that she did not see him threaten the defendant in any way, and that when she and Shields walked out of the bar, Shields had a can of beer in his hand. Gladys Albert, another state witness, testified that she did not see the victim with a gun and she did not see the victim threaten the defendant. A third woman, Peggy Greer the barmaid at Kelley's Bar, testified that she saw the defendant and the victim in the bar on the evening in question and did not see anything unusual happen prior to the shooting other than the victim had bumped into the defendant at one point. The state also emphasized that no weapon was found on the victim after the shooting.
In support of King's contention that he acted in self-defense,[1] defense counsel sought to question the defendant regarding prior threats made by the victim.[2] And defense counsel sought to introduce the criminal record of the victim.
*1110 Evidence of prior threats made by the victim of a homicide and of his prior criminal record are relevant in a case where the plea of self-defense has been raised to show that the victim was the aggressor and that defendant's apprehension of danger was reasonable. State v. Green, 335 So.2d 430 (La.1976); State v. Lee, 331 So.2d 455 (La.1976); I Wigmore on Evidence, § 63 (3rd ed. 1940); McCormick on Evidence, § 295 (2nd ed. 1972). However, evidence of dangerous character or threats against the accused is not admissible in the absence of evidence of hostile demonstration or of an overt act on the part of the person slain. La.R.S. 15:482. Overt act in this context means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. See State v. James, 339 So.2d 741 (La.1976); State v. Green, supra; State v. Lee, supra; State v. Brown, 172 La. 121, 133 So. 383 (1931).
When the state objected to the introduction of Shields' criminal record and the defendant's testimony concerning Shields' threats, the trial judge sustained the objections, apparently concluding after evaluating the evidence that he did not believe that an overt act had occurred. It should be noted that this case was tried before our decision in State v. Lee, supra, was handed down, and that the judge's ruling was not inconsistent with one line of cases which we subsequently overruled in Lee. See citations in Lee, supra at 460, note 4.
Nonetheless, as we now view that ruling, in light of State v. Lee, supra and the line of cases it followed, including State v. Burkhalter, 319 So.2d 392 (La.1975), the ruling was incorrect. In Lee, supra at 459, we held that a 1952 amendment to Louisiana Revised Statute 15:482 required that "when appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted him by law." See also State v. James, supra; State v. Green, supra. The statute and jurisprudence do, however, require that the overt act be established before the dangerous character and threat evidence concerning the decedent may be introduced. See State v. Lee, supra and cases cited therein; La. R.S. 15:482. But once the overt act is established, this type of evidence is admissible in support of a plea of self-defense in a murder prosecution for two distinct purposes: to show defendant's reasonable apprehension of danger which would justify his conduct; and to help determine who was the aggressor in the conflict. See I Wigmore on Evidence, § 63 (3d ed. 1940); McCormick on Evidence, § 295 (2d ed. 1972). When the evidence is introduced for the first purpose, as it was in this case, it is admissible to show the accused's state of mind, based on what he himself knew of the decedent's reputation or threats. Such evidence would tend to negative intent and would be relevant and admissible under La.R.S. 15:441 which provides that relevant evidence is that "tending to negative the commission of the offense and the intent." The reason for the overt act foundation requirement has been expressed as follows:
"There ought, of course, to be some other appreciable evidence of the deceased's aggression, for the character-evidence can hardly be of value unless there is otherwise a fair possibility of doubt on the point; moreover, otherwise the deceased's bad character is likely to be put forward to serve improperly as a mere excuse for the killing, under the pretext of evidencing his aggression, and it is often feasible to obtain untrustworthy character-testimony for that purpose."
I Wigmore on Evidence, § 63 (3d ed. 1940). See State v. Young, 344 So.2d 983 (La.1977); State v. Lee, supra.
In the case at hand, there was appreciable evidence in this record relevantly tending to establish the overt act. Defendant put forth evidence that he was forced to leave the bar on Shields' order, and with Shields armed, that he and Mascaro had been threatened by Shields at that time. Although the state introduced contradictory *1111 evidence as to the victim's actions at the bar, the trial judge could not properly have weighed the evidence of overt act, and thereby have infringed on the jury's function as fact-finder. Defendant King had presented evidence of an overt act by the victim at the time of the incident, an act which would have caused a reasonable man to fear that he was in imminent danger of great bodily harm. That showing was sufficient to make admissible his evidence as to the victim's prior threats, and as to his reputation.[3]
We recognize, of course, that had the jury been given this evidence that it still might have returned a verdict of manslaughter, as it did without the excluded evidence. Nevertheless, it was for the jury, not the judge, to make that fact-finding decision (should it have chosen to disbelieve defendant's witnesses and to believe the state's witnesses).
Finally, it is noted that the state argues in brief that the Court's decision in State v. Lee, supra, should not be applied retroactively and that because the trial in this matter occurred prior to that decision the conviction and sentence in this case should not be reversed. The state contends that the trial judge's ruling was made in good faith and in keeping with the decisions of this Court at the time the trial took place, and that to require retrial of these cases would create "an administrative chaos."
This Court has indicated that where a newly-announced rule goes to the very integrity of the fact-finding process, the rule will be given retroactive application. See State v. Liesk, 326 So.2d 871 (La.1976); State v. Rester, 309 So.2d 321 (La.1975). See also Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). It is only where the rule does not go to the integrity of the fact-finding process that the balancing of such considerations as the purpose to be served by the new standards, the extent of the reliance by law enforcement authorities on the old standards, and the effect on the administration of justice of a retroactive application of the new standards, should be explored. See Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, supra; State v. Liesk, supra.
In the instant case, the failure of the trial court to properly admit evidence relative to the defendant's plea of self-defense substantially impaired the truth-finding function and raised serious questions relative to the accuracy of the guilty verdict. As stated in Williams v. United States, supra, 401 U.S. at 653, 91 S.Ct. at 1152, in such cases "[n]either good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances."
For the foregoing reasons the conviction of defendant Robert King is reversed, his sentence is vacated, and the case is remanded to the district court for new trial.
DENNIS, J., concurs.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[1] Louisiana Revised Statute 14:20(1) provides that homicide is justifiable "when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."
[2] Defendant's testimony presented outside the presence of the jury was to the effect that a few days before the night in question Shields had gotten out of a car, called to him, stuck a pistol in his stomach, and told him that he would kill him the next time he saw him if he did not pay for some heroin that had been stolen from his home.
[3] With respect to the admissibility of the decedent's criminal record, the traditional rule is that character evidence is established by general reputation, not by specific acts. La.R.S. 15:479. Nevertheless, evidence of specific acts is relevant when a plea of self-defense is raised to show the defendant's state of mind, which is a material issue in such cases. La.R.S. 14:20. See State v. Lee, supra. Therefore although prior threats and violent acts, whether against the accused or against others, might be inadmissible as character evidence, they are admissible if the defendant knew of them at the time of the offense. Thus, in the instant case, the victim's prior record would be inadmissible unless there was a showing that the defendant knew of the record at the time of the homicide.