LABORDE, Judge.
Defendant James Lee Bullock was indicted for first degree murder. On May 10, 1976, the case was tried and the jury returned a verdict of guilty of second degree murder. The defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for 40 years. An out-of-time appeal was granted, 435 So.2d 446. Defendant appeals on the basis of four assignments of error. We affirm the conviction and sentence.
*1010 FACTS
On January 27, 1976, at a bar in Morgan City, Louisiana, the defendant, his girlfriend Cindy Scarborough, and a mutual friend, Joseph Moreno, met Joseph Mincey, the victim. Mr. Mincey, although a total stranger to the other three, prevailed upon them to take him dancing. The four drove down Highway 70 from Morgan City to Belle River. The car stalled and was parked on the side of the road in a desolate area of St. Martin Parish.
Bullock, Moreno, and then Mincey exited the car in an attempt to repair it. Shortly thereafter, several scuffles ensued between Bullock and Mincey. There is conflicting testimony as to who instigated the fight.
The defendant’s girlfriend, Cindy Scarborough, testified that she heard Bullock striking Mincey with a stick (an eighteen inch billy club) which Bullock kept in his car. She heard Mincey pleading for the beating to stop. She heard Moreno and Bullock say that there was nothing in Min-cey’s wallet, so they searched Mincey’s boots for money. She also testified that she saw Mincey, toothless and blood-soaked, struggle toward the levee after the assault.
The defendant testified that as he was attempting to repair the car, Mincey, who was much larger than Bullock, threatened him and shoved him to the ground. Bullock stated that he used the stick on Mincey to protect himself. He claimed that he removed money from the boots to pay for towing costs (although the three drove off together in the car after the fight). Min-cey’s boots were later found in the trailer of Bullock’s father.
Three days later, the body of Joseph Mincey was found on the levee. The coroner testified that Mr. Mincey had died as a result of an acute cerebral hemorrhage caused by a forceful blow to the head.
On February 26, 1976, the defendant, James Lee Bullock, was indicted for the first degree murder of Joseph Mincey. On May 10, 1976, the case was tried and the jury returned a verdict of guilty of second degree murder, a violation of LSA-R.S. 14:30.1. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for 40 years.
Defendant was granted an out-of-time appeal. On November 7, 1984, this court affirmed defendant’s conviction in an opinion limited to a review of the record of errors discoverable by mere inspection of the pleadings pursuant to La.C.Cr.P. Art. 920(2). State v. Bullock, 465 So.2d 3 (La.App. 3d Cir.1984). The limited review was a result of defendant’s failure to file formal assignments with the trial court as required by La.C.Cr.P. Art. 844. Apparently defendant had filed assignments of error on June 6, 1977, and on October 30, 1983. These assignments of error had not been included in the trial court record for forwarding to this court. This court granted the defendant’s application for a rehearing and ordered that the record be returned to the district court for insertion of the assignments. The assignments were returned to this Court. We now consider the errors designated in the assignments of error.
ASSIGNMENTS OF ERROR
Defendant asserts the following assignments of error:
1. Trial court erred in refusing to allow the defense counsel to present evidence regarding the criminal record of the alleged victim, although self-defense was an issue at trial.
2. Trial court erred in refusing to confine the prosecutor’s rebuttal argument to answering the argument of the defense counsel.
3. Trial court erred in allowing the prosecutor during rebuttal argument to appeal to the jury for sympathy for the alleged victim.
4. Trial court erred in denying defendant’s motion for a new trial based on the court’s failure to admonish the jurors not to discuss the case and on the juror’s discussion of the case pri- *1011 or to being charged by the trial judge.
ASSIGNMENT OF ERROR NO. 1
Defendant argues that the trial court erred in refusing to allow the defense counsel to present evidence regarding the criminal record of the alleged victim, although self-defense was an issue in the trial.
During the cross-examination of a rebuttal witness for the state, the defense counsel asked the rebuttal witness if he knew that the victim had been an ex-convict from Tennessee. When the trial court sustained the state’s objection, the defense counsel objected and asked that the court issue a subpoena to the district attorney for the “FBI rap sheet” on the victim. The trial court denied the defendant’s request. Defendant now argues that since an overt act had been established, the defense was entitled to elicit testimony concerning the victim’s prior criminal record.
Evidence of a victim’s dangerous character or threats against the accused is relevant in a case where the plea of self-defense has been raised to show that the victim was the aggressor and that defendant’s apprehension of danger was reasonable. State v. Green, 335 So.2d 430 (La.1976); State v. Lee, 331 So.2d 455 (La.1976); I. Wigmore on Evidence, 363 (3rd ed.1940); McCormick on Evidence, sec. 295 (2nd ed.1972). Evidence of dangerous character or threats against the accused is not admissible in the absence of evidence of hostile demonstration or of an overt act on the part of the victim. LSA-R.S. 15:482.[1] Overt act in this context means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. State v. James, 339 So.2d 741 (La.1976); State v. King, 347 So.2d 1108 (La.1977).
Evidence of “hostile demonstration or of overt act" was presented by the defense, albeit minimal.[2] However, there is no evidence tending to show that the defendant knew of the victim’s reputation for violence or of the victim’s prior criminal record. To the contrary, the testimony indicates that the defendant and victim had known nothing of each other until just before the incident.[3] The record is devoid of any testimony indicating that the defendant knew of the victim’s criminal record.
The Louisiana Supreme Court commented on the introduction of criminal records of homicide victims where a plea of self-defense is raised in State v. King, 347 So.2d 1108 (La.1977). Footnote No. 3 states:
“With respect to the admissibility of the decedent’s criminal record, the traditional rule is that character evidence is established by general reputation, not by specific acts. La.R.S. 15:479. Nevertheless, evidence of specific acts is relevant when a plea of self-defense is raised to show the defendant’s state of mind, which is a material issue in such cases. La.R.S. 14:20. See State v. Lee, supra. Therefore although prior threats and violent acts, whether against the accused or against others, might be inadmissible as character evidence, they are admissible if the defendant knew of them at the time *1012 of the offense. Thus, in the instant case, the victim’s prior record would be inadmissible unless there was a showing that the defendant knew of the record at the time of the homicide.”
In State v. Sam, 412 So.2d 1082, 1086 (La.1982), the Louisiana Supreme Court cited King, supra, holding “the victim’s prior record may be admitted if a showing is made that Sam [the accused] knew of the record at the time of the shooting.”
The record offers no evidence indicating Bullock’s awareness, at the time of the incident, of Joseph Mincey’s criminal record. The trial court committed no error in not permitting testimony of the victim’s criminal record. This assignment of error lacks merit.
ASSIGNMENT OP ERROR NO. 2
Defense counsel urges that the trial court erred in refusing to confine the prosecutor’s rebuttal argument to answering the argument of defense counsel.
The prosecutor during rebuttal argument discussed inconsistencies in the defendant’s statements. The defendant objected on the grounds that the issues addressed in rebuttal were not referred to in defendant’s closing argument.
Louisiana Code of Criminal Procedure Art. 774 provides in part: “The state’s rebuttal shall be confined to answering the argument of the defendant.” The record reveals that in his closing argument, defense counsel did in fact refer to inconsistencies in the defendant’s statement.[4]
The argument was properly within the scope of La.C.Cr.P. 774 as it related to issues in the closing argument. State v. Williams, 358 So.2d 943 (La.1978); State v. Sosa, 328 So.2d 889 (La.1976); State v. Pellerin, 286 So.2d 639 (La.1973). This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
In this assignment of error, defendant alleges that the trial court erred in allowing the prosecutor during rebuttal argument to appeal to the jury for sympathy for the victim, Mr. Mincey. During his rebuttal argument, the prosecutor stated:
“Ladies and Gentlemen, the defendant in any trial will raise certain defenses that may or may not be absolute defenses, assuming that he were in fact guilty of the crime. In this case the defense has raised several defenses that they have presented to you, possibly intoxication, self-defense, insanity, and finally, sympathy, which is not a defense listed in any law book, sympathy. But he’s certainly given you a lot of it. He’s certainly asking for you to take sympathy on James Lee Bullock. In response to the sympathy defense, I simply say, if you’re going to sympathize with James Lee Bullock, then you are to sympathize with Joseph Mincey just as much....”
At this point, defense counsel moved for a mistrial on grounds that the prosecutor incensed the jury.
Louisiana Code of Criminal Procedure article 774 mandates that “[t]he argument shall not appeal to prejudice.” In State v. Morris, 404 So.2d 1186 (La.1981), the Louisiana Supreme Court reiterated the jurisprudential rule that a prosecutor has some latitude to use argument outside the scope of La.C.Cr.P. art. 774 to “refute defense argument of like character.” Id. at 1191.
During direct examination, defendant testified as to his “personal problems” *1013 and unhappy existence. The record contains six pages of defense counsel’s closing argument relating directly to defendant’s heart problems, unhappy childhood, psychiatric problems and unfortunate family situation. It is apparent defense counsel attempted to spark sympathy for defendant. In stating, “... you are to sympathize with Joseph Mincey just as much ...” the prosecutor was properly responding to the issue of sympathy raised by the defense counsel. State v. Morris, 404 So.2d 1186 (La.1981); State v. Sosa, 328 So.2d 889 (La.1976); State v. Williams, 373 So.2d 1278 (La.1979) (Summers, C.J., concurring).
The properness of the remark concerning sympathy notwithstanding, we will assume arguendo that the argument was improper. To constitute reversible error, an improper argument by a prosecutor must be shown to have influenced the jury and contributed to the verdict. State v. Barrow, 410 So.2d 1070 (La.1982), cert. denied 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982). In this case, there is no showing that defendant was prejudiced by the argument. The State’s overwhelming evidence of defendant’s guilt makes it highly unlikely that the comment influenced the jury or contributed to its verdict.[5] La.C.Cr.P. Art. 921; State v. Carthan, 377 So.2d 308 (La.1979). This assignment is without merit.
ASSIGNMENT OF ERROR NO. 4
Defense counsel contends that the trial court erred in denying his motion for a new trial based on the court’s failure to admonish the jurors not to discuss the case and on the jurors’ discussion of the case prior to being charged by the trial judge. Defense counsel moved for a mistrial just before the jury returned and moved for a new trial just prior to sentencing. The judge’s denial of the motions form the basis of this assignment of error.
Whether a mistrial should be granted when prejudicial conduct in the courtroom makes it impossible for defendant to obtain a fair trial is within the sound discretion of the trial judge. Denial of the mistrial will not be disturbed on appeal absent abuse of discretion. State v. Smith, 433 So.2d 688 (La.1983). There was no abuse of discretion in this case.
There is no statutory requirement that the trial judge instruct the jurors not to discuss the case among themselves.[6] A review of the transcript reveals that the trial judge did not specifically warn the jurors not to discuss the case among themselves. The jurors were, however, properly sequestered immediately after being sworn and did not thereafter separate for the remainder of the trial. In fact, the court instructed the jury to keep an open mind until after arguments and instructions were given.[7]
In State v. Vince, 305 So.2d 916 (La.1974), the Louisiana Supreme Court stated: “Absent a showing that the jurors discussed the case among themselves, there *1014 exists no prejudicial error and hence, no grounds for a new trial. State v. McCauley, La. 272 So.2d 335 (1973).” No evidence that jurors discussed the case is before us.[8]
The defendant’s allegation is not supported by evidence. The trial court did not err in its refusal to grant a mistrial or a new trial. This assignment of error is without merit.
For the reasons stated above, we affirm the conviction and sentence.
AFFIRMED.

. LSA-R.S. 15:482 provides "In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.”

. According to the defendant, the victim shoved defendant and tried to kick him. The incident ended. Minutes later defendant shoved the victim who proceeded to punch defendant. The victim then "grabbed me [defendant] like in a bear-hug, and I grabbed a hold of that stick, and I hit him either in the mouth or right here.”

.[State] "Did you eventually meet this man ... they call Joseph Mincey at the River Palace?”
[Defendant] “Yes, sir.”
[State] “Was that the first time you had ever seen him?”
[Defendant] "Yes, sir.”
Defendant says after the beating he looked for Mincey:
[State] “Why did you go to those places to inquire?”
[Defendant] "To look for this big man, you know. All I knew him by is that he had big sideburns, that he was tall and big and husky. That's all I knew about him."

. The prosecutor was allowed to discuss inconsistent statements made by the defendant regarding Mr. Mincey’s boots, wallet and money, billy club and where he slept the night of the incident. Prior to rebuttal, however, defense counsel argued:
"Much is going to be made about the questions that came up over here, "Well, didn’t you say in Franklin such-and-such”, and “Didn’t you say in St. Martin such-and-such", and "Didn’t you say here such-and-such”. Ladies and Gentlemen, if you ask me what happened about some important incidents of my life, even if you talk about the surgery I had last year or some other type of event, let me tell you something, whether it's serious or not, and you ask me about the same story three, four, five, six times, I can assure you, they’re not going to be the same_"

. Two eye witnesses testified as to the incident (Cindy Scarborough and James Lee Bullock). The record shows that all essential elements of second degree murder have been proved beyond a reasonable doubt.

. Comment (b) to Article 791, Code of Criminal Procedure includes the following language:
"(b). The requirements of Sec. 319 of the A.L.I. Code of Criminal Procedure, that if the court permits the jurors to separate, it must admonish them not to discuss the case or form any opinion and not to visit the scene of the crime, were not adopted in this article because they are in the nature of minutiae. As a practical matter, the judges always so admonish the jurors at the beginning of every recess." (emphasis added)

. The record states:
“As I indicated this morning, the law requires that jurors be sequestered after they’re sworn. You’ve been sworn. The Sheriff of this parish has made arrangements to take care of all your needs, to run errands for you if you need anything. He’ll do that. This case will take a day or two more. During the time I ask you to keep an open mind. Don't take the testimony of the first witnesses or any witness until you’ve heard the whole thing. Try to keep an open mind about the whole thing until the lawyers have had a chance to argue the case to you and I have had a chance to give my instructions in detail. Don’t read any newspaper articles or television ads or anything concerning this case or news articles at all, period."

. Defense counsel waived the right to present evidence of juror misconduct. No evidence of misconduct was entered or proffered for appellate review. The appellate brief lacks specific evidence of misconduct.