# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #011

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of April, 2020** are as follows:

**PER CURIAM:**

2019-K-00490        STATE OF LOUISIANA  VS.  CLIFFORD WILLIAMS (Parish of Orleans Criminal)

Before trial, the defense was prohibited from introducing evidence of the victim's juvenile arrest for illegal carrying of a weapon. At trial, the defense unsuccessfully attempted to introduce other evidence of the victim's character. Specifically, the defense sought to introduce a photograph that depicted the victim holding a gun, evidence that the victim had threatened defendant on social media, and testimony of a witness that the victim had previously threatened defendant. In rejecting defendant's claim on appeal that the district court erred in excluding this evidence, the court of appeal found that defendant failed to introduce appreciable evidence of a hostile demonstration or overt act on the part of the victim at the time of the offense charged, as required by La.C.E. art. 404(A)(2)(a). See State v. Williams, 18-0445, pp. 19-20 (La. App. 4 Cir. 2/27/19), 265 So.3d 902, 917. Defendant contends that the court of appeal erred because testimony of an eyewitness (which is summarized below) constituted appreciable evidence of an overt act by the victim, and the district court overstepped its bounds in evaluating the credibility of this witness to find the evidence was not appreciable because the witness was not credible. We agree. However, for the reasons below, we find the evidence was otherwise inadmissible, and therefore we affirm the conviction and sentence.

AFFIRMED.

Retired Judge James H. Boddie, Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

**SUPREME COURT OF LOUISIANA**

**No. 2019-K-00490**

**STATE OF LOUISIANA**

**versus**

**CLIFFORD WILLIAMS**

**ON WRIT OF CERTIORARI TO THE FOURTH CIRCUIT
COURT OF APPEAL, PARISH OF ORLEANS**

**PER CURIAM:***

On March 25, 2013, the 18-year-old defendant shot and killed 15-year-old Ralphmon Green in the 2100 block of Allen Street in New Orleans. The victim was struck by bullets four times and defendant continued to fire at him after he fell to the ground. Eight shell casings found at the crime scene matched a semiautomatic handgun that was later found at defendant's residence. Several eyewitnesses to the shooting testified that the victim was unarmed.

Defendant, who did not testify at trial, initially denied any involvement in the shooting when questioned by police. He eventually claimed that he shot the victim after they argued because the victim was about to pull a handgun from his waistband beneath his shirt. Defendant denied that he knew the victim or had ever seen him before the shooting.

Before trial, the defense was prohibited from introducing evidence of the victim's juvenile arrest for illegal carrying of a weapon. At trial, the defense unsuccessfully attempted to introduce other evidence of the victim's character. Specifically, the defense sought to introduce a photograph that depicted the victim holding a gun, evidence that the victim had threatened defendant on social media,

* Retired Judge James Boddie Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

and testimony of a witness that the victim had previously threatened defendant. In rejecting defendant's claim on appeal that the district court erred in excluding this evidence, the court of appeal found that defendant failed to introduce appreciable evidence of a hostile demonstration or overt act on the part of the victim at the time of the offense charged, as required by La.C.E. art. 404(A)(2)(a). *See State v. Williams*, 18-0445, pp. 19–20 (La. App. 4 Cir. 2/27/19), 265 So.3d 902, 917. Defendant contends that the court of appeal erred because testimony of an eyewitness (which is summarized below) constituted appreciable evidence of an overt act by the victim, and the district court overstepped its bounds in evaluating the credibility of this witness to find the evidence was not appreciable because the witness was not credible. We agree. However, for the reasons below, we find the evidence was otherwise inadmissible, and therefore we affirm the conviction and sentence.

In pertinent part, La.C.E. art. 404 provides:

**A. Character evidence generally.** Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible in a civil or criminal proceeding for the purpose of proving he acted in conformity therewith on a particular occasion, except:

. . .

**(2) Character of victim.** (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provide that in the absence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible . . . .

**B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. . . .

(2) In the absence of a hostile demonstration or overt act on the part of

2

the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible . . . .

Prior to 1952, La.R.S. 15:482 (a precursor to La.C.E. art. 404) provided (emphasis added): "In the absence of *proof* of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible." In 1952, the legislature amended that provision to substitute the word "evidence" for "proof." *See* 1952 La. Acts 239, § 1. This court later explained the effect of this amendment:

> The legislative intent reflected by the 1952 amendment was to overrule legislatively our decisions that permitted the trial judge's discretion to determine incredible the defendant's evidence of an overt act and thus, without jury evaluation of it to withhold from the jury evidence tendered by the defendant in support of his position that he was acting reasonably in self-defense. This is the explicit purport of the amendment, and the prior academic and judicial criticism of the former interpretation (unique to Louisiana) re-enforces our view that such was the legislative intent.
>
> . . .
>
> The trial court thus committed error in its ruling, for it ignored the effect of the 1952 amendment. By it, when appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted him by law.

*State v. Lee*, 331 So.2d 455, 459 (La. 1975) (citations omitted). A trial court is not entitled to "exercise[] a 'credibility determination' to refuse the defendant the right to have the jury determine the merits of [his] plea of self-defense." *State v. Edwards*, 420 So.2d 663, 669 (La. 1982). The most notable limit that this court has placed on the "appreciable evidence" standard is that "[t]he self-serving, contradicted testimony of a the defendant that [the victim] leaned toward a place the defendant believed he kept a gun is not appreciable evidence tending to

3

establish an overt act." *State v. James*, 339 So.2d 741, 746 (La. 1976).

Here, the evidence of an overt act is almost certainly worthy of disbelief by a jury, but it still qualifies as appreciable within the meaning of the article as interpreted by the jurisprudence. The court of appeal described the witness's testimony, which formed the sole basis at trial for finding that the victim committed an overt act:

> The next defense witness was Lamont Anderson ("Mr. Anderson"), who admitted to currently being incarcerated. Mr. Anderson recounted the events of March 23, 2013, stating that when he came home from school that afternoon, he and someone named "Dominique" got into an argument. Defendant stepped in to de-escalate the argument. Dominique and Defendant then walked away. Dominique then called the victim who arrived on the scene and began arguing with Defendant because he thought Defendant was the person who had argued with Dominique. The victim threatened Defendant and called him names. The victim then "went to reach—went to get a gun from Dominique." The victim clutched the gun in the waistband of his pants. When the shooting started, Mr. Anderson ran inside. He admitted he did not witness the actual shooting. Mr. Anderson also conceded that his sister and Defendant were involved in a dating relationship.
>
> On cross-examination, Mr. Anderson stated that he was currently in jail with Defendant. Mr. Anderson said he lied when he told the district attorney on multiple occasions and told the detective right after the shooting that he did not see the victim at all on the day of the shooting. He also admitted he never told the detective that he saw the victim clutching a gun. Mr. Anderson stated that he was inside for some minutes "talking, fussing" with his mother before he heard the gunshots. He stated that he never saw any firearms on the day of the shooting. Instead, he said he only saw the victim holding the waistband of his pants. However, during further questioning, Mr. Anderson once again stated he saw "Dominique" give the victim a gun. However, Mr. Anderson stated Dominique gave a gun to the victim a few minutes before the shooting, when he got home "around three o'clock" in the afternoon. The prosecutor established that Mr. Anderson was wrong about the time frame as the victim was actually shot about three hours later. The prosecutor also impeached Mr. Anderson with a statement he made to the jury that he had not spoken to Defendant in a month, yet in a phone call from jail, Mr. Anderson stated he spoke to Defendant a couple of days before the trial.

4

*Williams*, 18-0445, pp. 9–10, 265 So.3d at 911–12. Viewing this testimony without evaluating the witness's credibility, it describes potentially four overt acts or hostile demonstrations: 1) arguing with defendant; 2) threatening defendant; 3) retrieving a gun from a third party; and 4) clutching a gun in the waistband of his pants.

However, the inquiry does not end there. Once evidence of an overt act is established on the part of the victim, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: 1) to show a defendant's reasonable apprehension of danger to justify his conduct, and 2) to help determine who was the aggressor in the conflict. *See Edwards*, 420 So.2d at 670. The *Edwards* court further explained:

> As pointed out in *Lee*, when the evidence is sought to be introduced to show the accused's state of mind, it must be shown that the defendant knew of the victim's prior threats or reputation. Once it is shown that the defendant had such knowledge, the scope of evidence allowed to indicate the victim's character is not limited to evidence of general reputation, but includes evidence of specific threats or acts of violence by the victim against the accused. *State v. Boss*, 353 So.2d 241 (La. 1977). Conversely, when evidence of the victim's dangerous character [character evidence] is sought to be introduced by a defendant for the second purpose [to prove that the victim was the aggressor], there is no requirement that the defendant have knowledge of the victim's prior acts or reputation. However, consistent with the evidentiary rule, which is not premised on defendant's knowledge of the victim's character, there still remains the general rule that character, whether good or bad, "depends upon the general reputation that a man has among his neighbors." La.R.S. 15:479. Under this rule, proof of a victim's character tending to prove who is the aggressor in a conflict must be established by the general reputation of the victim, not by specific acts. Only evidence of general reputation, not evidence of specific acts or personal opinion, is admissible to establish who was the aggressor in the conflict. *State v. Boss, supra*.

*Edwards*, 420 So.2d at 670–71 (brackets in original).

Pretrial, defendant contended he wished to introduce the victim's juvenile

arrest record "to show that Ralphmon Green acted in conformity therewith and that he possessed a firearm illegally." However, under La.C.E. art. 404(B)(1), evidence of this prior bad act "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Furthermore, there is no indication that defendant had any knowledge of the victim's prior arrest for illegal carrying of a weapon, as might bear upon his state of mind as to the victim's dangerous character. *See* La.C.E. art. 404(B)(2); *see also Edwards*, 420 So.2d at 670.

The other three types of evidence the defense sought to admit at trial—the photograph showing the victim holding a gun, threats against defendant on social media, and testimony about a prior threat—could constitute prior threats or specific acts that affected defendant's state of mind as to the victim's dangerous character if defendant had been aware of them. However, defendant denied any knowledge of or familiarity with the victim before the day of the incident. Defendant's denial of any knowledge of the victim at all stands as a formidable obstacle to his attempt to introduce this evidence to establish his apprehensive state of mind.

Nonetheless, evidentiary rules must yield to the constitutional right to present a complete defense in some instances. Fundamental to due process of law is the right to present a defense, *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and to have it fairly considered by the jury, *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986), citing *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or

6

disproportionate to the purposes they are designed to serve. *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503 (2006) (quotation marks and citations omitted).

While the requirement of showing an overt act might be viewed as a high hurdle where a victim has previously made threats toward a defendant, this court previously explained the reason for that threshold showing:

> The reason for the overt-act foundation required to let in such evidence to prove aggression is explained by Wigmore, Section 63 at pp. 489–490: 'There ought, of course, to be some other appreciable evidence of the deceased's aggression, for the character-evidence can hardly be of value unless there is otherwise a fair possibility of doubt on the point; moreover, otherwise the deceased's bad character is likely to be put forward to serve improperly as a mere excuse for the killing * * *. *See also* McCormick on Evidence, Sections 193, 295 (2d ed., 1972).

*Lee*, 331 So.2d at 460. Thus, the applicable rule already has a built-in balancing test concerning the right to present a defense: a defendant has a right to present evidence of the victim's prior threats, but not at the expense of placing the victim on trial for those threats alone.

Additionally, cases in which evidentiary rules have been found to impinge upon the constitutional right to present a defense usually turn on two key considerations: 1) an arbitrary rule, and 2) otherwise reliable or relevant evidence. In *Chambers*, 410 U.S. 295–96, 93 S.Ct. at 1046, the excluded evidence was a statement against a witness's interest that Mississippi's "voucher" rule rendered inadmissible when the defendant attempted to impeach his own witness. In *Washington*, 388 U.S. at 16, 87 S.Ct. at 1921–22, the excluded evidence was another statement against interest by one codefendant who would have testified favorably on behalf of another codefendant, but was prevented from doing so by a

Texas statute prohibiting co-participants in a crime from testifying for one another. In *Crane*, 476 U.S. at 685–86, 106 S.Ct. at 2144, the trial court precluded the defendant from presenting evidence at trial concerning the circumstances under which the police obtained his confession, which the state conceded was the linchpin of its case. Finally, in *Holmes*, 547 U.S. at 323, 126 S.Ct. at 1730–31, the trial court had excluded evidence concerning third-party guilt—including multiple statements against interest—for the sole reason that it that conflicted with purportedly "strong evidence" of the defendant's guilt, including forensic evidence.

Here, the rule is not arbitrary. Even if requiring a defendant to show appreciable evidence of an overt act or a hostile demonstration is burdensome, this rule: 1) has a clear purpose, and 2) is not the reason why this evidence should have been excluded in this trial (despite the court of appeal's conclusion to the contrary). Rather, this evidence should have been excluded because of defendant's failure to show personal knowledge of the victim's alleged threatening behavior (because he disclaimed ever knowing the victim). That rule presents no arbitrariness and is grounded in the simple fact that a person cannot fear an event he does not know occurred.

Accordingly, for the reasons above, we affirm defendant's conviction and sentence.

**AFFIRMED**

8